# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**BROOKE WOLD,**

    **Plaintiff,**

vs.                                                                                                        Case No.: _____

**DR. DENISE M. CARLIN, SUPERINTENDENT, of
LEE COUNTY, FLORIDA SCHOOLS in her
Individual and Official Capacity,**

    **Defendant.**

_____/

## COMPLAINT

1. Plaintiff, brings this suit pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief against Defendant for the violation of her First and Fourteenth Amendment rights. Plaintiff also demands damages against the Defendant for losses occasioned by the unconstitutional retaliation against her in violation of the First Amendment.

## JURISDICTION

2. This suit is brought pursuant to 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

3. This Court has "federal question" jurisdiction pursuant to 28 U.S.C. § 1331 to hear cases arising under the Constitution of the United States; under 28 U.S.C. § 1343(3) to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution; and under 28 U.S.C. § 1343(4) to secure equitable or other relief for the protection of civil rights.

4. The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

5. The Court may enter an award of attorney's fees pursuant to 42 U.S.C. § 1988.

6. This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiff's rights, privileges, and immunities under the Constitution of the United States and 42 U.S.C. §§ 1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First and Fourteenth Amendments to the Constitution.

7. This action seeks a judicial determination of issues, rights, and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain policies and practices of Defendants. There are substantial *bona fide* doubts, disputes, and questions that must be resolved concerning Defendants' actions taken under color and authority of state law and procedures, in violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

## VENUE

8. Venue is proper in the Middle District of Florida, Ft. Myers Division, since Defendant is situated in Ft. Myers, and a substantial part of the actions complained of occurred within the district and geographical area assigned to the Ft. Myers Division, 28 U.S.C. § 1391(b).

## PARTIES

9. Plaintiff, BROOKE WOLD, (hereinafter "Wold" or "Plaintiff"), is an individual, *sui juris*, residing in Lee County, Florida.

10. Plaintiff is a teacher employed by the School Board of Lee County, Florida ("the School Board").

11. Defendant, Dr. Denise M. Carlin ("Carlin"), is a natural person, *sui juris*, employed by the School Board as its Superintendent of Schools. At all times material to this action, Carlin acted in her capacity as Superintendent. Carlin was Plaintiff's ultimate supervisor. Carlin is sued in her individual and official capacity.

## COLOR OF STATE LAW

12. Defendant is a public official and official of a state agency and was acting under color of state law and authority.

13. Defendant's actions, taken under color of state law, violate Plaintiff's constitutional rights to engage in free speech.

## FACTS RELATIVE TO PLAINTIFF'S TERMINATION

14. Plaintiff has a private social media account on Facebook which is accessible by friends and acquaintances who "follow" her but is not accessible to all Internet users. The Facebook account has no connection with Plaintiff's work for the School Board; it is a purely private account.

15. On or about September 10, 2025 Plaintiff made a Facebook post regarding the death of Charlie Kirk, stating, "I pray Charlie receives whatever God sees fit."; "Remember Charlie did say 'some gun deaths are worth it'"; and "well sounds like he made a sacrifice that was worth it for him." (See Ex. "A" attached hereto)

16. The posts reference the shooting of Mr. Kirk on September 10, 2025, and his past controversial remarks on school shootings. Mr. Kirk was a prominent conservative activist who was known for sharing his often controversial viewpoints through podcasts and debates on college campuses. Among the views he shared was that "it's worth to have a cost of, unfortunately, some gun deaths every single year so that we can have the Second Amendment to protect our other God-given rights", and that school shootings could best be addressed by having more guards at schools."[1]

17. Plaintiff intended her post to convey a particularized political message which is apparent from the text itself. That political message incorporates the following ideas:

A. Mr. Kirk's ideology included supporting gun rights even at the expense of innocents, such as children in their classrooms.

18. Plaintiff's political statement does not condone Mr. Kirk's killing; nor does it call for further violence.

---

[1] Media Matters Staff, *Charlie Kirk: "It's worth to have a cost of, unfortunately, some gun deaths every single year so that we can have the Second Amendment"*, Media Matters for America, Apr. 6, 2023, https://www.mediamatters.org/charlie-kirk/charlie-kirk-its-worth-have-cost-unfortunately-some-gun-deaths-every-single-year-so-we.

19. Mr. Kirk was a public figure widely known for his controversial political views, and his death is a matter of public concern. At the time Plaintiff posted this message, Mr. Kirk's killing was the topic of discussion across the nation. The President and much of his cabinet attended Mr. Kirk's memorial along with some 90,000 of his followers. Mr. Kirk's legacy remains a point of contention among both politicians and citizens in Florida and everywhere else in the country.

20. Plaintiff's political post is fully protected by the First Amendment to the United States Constitution, made effective against the States through the incorporation doctrine of the Fourteenth Amendment.

21. Political speech on matters of public interest and concern lies at the core of the First Amendment.

22. Plaintiff's post does not fall within any of the narrow categories of speech which are excluded from the protection of the First Amendment.

A. Plaintiff's post did not pose any risk of imminent incitement to lawless action and did not include any "fighting words"; it was a political statement disseminated by way of the Internet; was not directed at any particular person or group; did not employ any epithets or racial slurs; was sent under calm circumstances; and did not call for the commission of any violent act.

B. Plaintiff's post was not a true threat; the post did not threaten anyone but merely stated a political opinion about a political figure.

C. Plaintiff's post was not obscene in whole or in part; the post does not depict or describe any sexual act that might appeal to the prurient interest.

D. Plaintiff's post was not defamatory in whole or in part; the post represented a pure political opinion which cannot be proven true or false and which contained obvious elements of rhetorical hyperbole.

E. Plaintiff's post was not associated with any criminal conspiracy and was not integral to criminal conduct; no crime was suggested, contemplated, or associated with this political post.

F. Plaintiff's post was not involved in any fraud and did not propose any fraudulent transaction; the post was a noncommerical political statement.

G. Plaintiff's post did not invade any registered copyright, trademark or patent or otherwise infringe anyone's intellectual property rights.

H. Plaintiff's post was not treasonous or a call of insurrection, nor did it betray any state secrets or threaten the nation's security.

23. Plaintiff's post was not connected with her employment in any respect. Plaintiff alleges the following particulars:

A. The post was not shared during work hours and did not involve any State property, money, or resources. Instead, the post was shared from Wold's personal account.

B. Plaintiff's post was not made in connection with her employment and was not part of her job responsibilities.

C. Plaintiff was employed as a teacher. In addition, the death of Mr. Kirk has nothing to do with the function or purpose of the School Board.

D. The School Board did not request or direct Plaintiff to make this post.

E. Plaintiff did not identify herself as an employee of the School District on her Facebook account. The School Board is not mentioned anywhere in the text of the post, Plaintiff does not appear in any recognizable uniform, and there would be no reason for the general public to link or associate Plaintiff's post with the School Board.

F. Plaintiff was not purporting to speak for or on behalf of the School Board; the text and circumstances show that Plaintiff was making a purely personal political statement unconnected with her employer.

24. On September 16, 2025, Melissa Layner, Principal at Teal Middle School sent an email to David Eaton at the Office of Professional Standards regarding Plaintiff's post, stating as follows:

David,

Thank you for contacting me about this matter.

On September 10th at 7:27 pm, Assistant Principal McGinley texted me that Mrs. Wold made a Facebook post regarding the assassination of Charles Kirk, stating "whatever God sees fit." By that time, the post had already been shared to at least one other person on FB. At that point, I contacted Mrs. Wold to make her aware that her post was going viral and she stated that she had already removed it. I immediately sent the information to my supervisor, Angela Nader, and we spoke by phone. Up until 10pm that night, I was on the phone with:

My Admin team to direct them not to engage in conversation about this
Mrs. Nader to convey information and next steps
Michael Harris on next steps
Mrs. Wold to convey district directives

-7-

> That night I also received three emails to my Lee Schools account, which was also sent to the account of each of our assistant principals. On Friday, September 11th,k our LTMS Facebook messenger app received one complaint regarding Ms. Wold's post and I received one direct phone call from a community member. I could not verify if any of them had a student who attends our school.
>
> As for other impact on our building, that was minimal, although there has been schoolwide gossip taking place.
>
> Due to the budget shortfall, Ms. Wold had already been planning to transfer to another SDLC location, so her students had already been reassigned. However, her transfer was not supposed to be effective until the following week so we had to scramble for coverage on Thursday and Friday (11th and 12th respectively.) This has definitely impacted that receiving school, G. Weaver Hipps Elementary, who was awaiting her transfer. (See Ex. "B" attached hereto)

25. On or about September 25, 2025 the School District of Lee County, through officials of the Office of Professional Standards met with Plaintiff, and her representatives, to discuss her Facebook posts regarding Mr. Kirk.

26. On October 6, 2025 the Superintendent sent a Petition For Termination of Employment to Plaintiff, served on Plaintiff on October 14, 2025, notifying her she was being terminated as an employee of the School Board at the November 4, 2025 School Board meeting. (See Ex. "C" attached hereto)

27. Defendant specifically objects to the viewpoint expressed by Plaintiff: indifference to Mr. Kirk's killing. That viewpoint-based discrimination is demonstrated by the following:

A. Defendant has not terminated anyone for publicly mourning Mr. Kirk's death.

28. Defendant's actions here were based on her opposition to the content and viewpoint of Plaintiff's speech and not based on any good faith belief that Plaintiff's post would disrupt the ability of the School District to function, upset its ability to deliver state services, or lead to dissension in the office. Plaintiff alleges the following particulars:

A. No significant disruption occurred on the workdays following the time Plaintiff posted on Facebook.

B. The timing of Plaintiff's termination leaves no doubt that it was motivated purely in response to her political statement.

C. Defendant nowhere claims that Plaintiff's political statement significantly disrupted or had any potential to disrupt the School District's's ability to deliver services or effectively administer its programs.

29. On information and belief, Defendant intended this termination to chill the future speech of all School District employees by making a public example of Plaintiff.

30. There is a direct causal connection between Plaintiff's political speech and Defendant's decision to terminate her employment.

## ALLEGATIONS IN SUPPORT OF INJUNCTIVE RELIEF

31. Plaintiff's free speech has been chilled now, and in the future, as she has been deprived of her very livelihood as a consequence of her speech.

32. Unless the actions, policies, and practices of Defendant are enjoined by this Court, Plaintiff will suffer the continuing loss of her constitutional rights.

33. Plaintiff has suffered irreparable injury and continues to suffer irreparable injury as a result of the Defendant's actions, policies, and practices.

34. Plaintiff will continue to suffer the violation of her First Amendment rights unless and until she is restored to her employment and position.

35. Plaintiff does not have a plain, adequate, or complete remedy to protect her constitutional rights and to redress the wrongs and illegal acts complained of, other than immediate and continuing injunctive relief.

36. Plaintiff does not have an adequate remedy at law. Deprivation of rights guaranteed under the Constitution is an irreparable injury for purposes of injunctive relief. In cases involving the loss of First Amendment rights, such as in this case, monetary damages are inadequate.

37. The public interest would be served by the granting of injunctive relief. In fact, the public interest is disserved by actions, such as those of Defendant, which interfere with the public's rights guaranteed under the First Amendment.

38. A permanent injunction will preserve Plaintiff's civil rights and will minimize the need to award extensive compensatory damages.

## DAMAGES AND ATTORNEY'S FEES

39. Because of Defendant's actions, Plaintiff's First and Fourteenth Amendment rights have been violated and Plaintiff is faced with similar and repeated violations of her rights in the future.

40. Plaintiff has suffered economic losses, including the lost income from employment she would have received but for her illegal and unconstitutional termination.

41. Plaintiff has retained Herdman & Vicari, P.A., as her attorneys to represent her in this action. Defendant is obligated to pay Plaintiff's attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT I

### First Amendment Violation - Retaliation

42. Plaintiff realleges the facts set forth in Paragraphs 1 through 42 and incorporate those facts into this Count by reference.

43. This is an action for declaratory relief and injunctive relief brought by the Plaintiff against Carlin under this Court's general jurisdiction and pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

44. Plaintiff is uncertain as to her rights and remedies following the termination of her employment in apparent violation of the First Amendment to the United States Constitution.

45. In posting the political comment concerning the death of Mr. Kirk, Plaintiff spoke as a private citizen.

46. Plaintiff's comments concerning the death of Mr. Kirk addressed matters of public concern.

47. Defendant Carlin took adverse action against Plaintiff - specifically her discharge from employment and the associated wages and benefits.

48. Defendant Carlin had the actual authority to bring disciplinary charges against Plaintiff, including her discharge from employment.

49. The termination notice ordered by Carlin gave effect to and implemented the disciplinary action against Plaintiff.

50. Defendant Carlin's actions directly deprived Plaintiff of her First Amendment rights.

51. Defendant Carlin's adverse action was in direct response to Plaintiff's protected political speech.

52. Plaintiff's political post was the motivating factor in Defendant Carlin's decision to take retaliatory action against Plaintiff. Defendant Carlin immediately terminated Plaintiff because of her private political comments on a matter of public importance.

53. Defendant Carlin's response to Plaintiff's expression was sufficient to deter a person of ordinary firmness from continuing to engage in expressive activity.

54. Defendant Carlin's actions have chilled Plaintiff's speech.

55. Defendant Carlin's actions were based on her objections to the content of Plaintiff's speech and the particular viewpoint expressed, all in direct retaliation for Plaintiff's speech.

56. Defendant Carlin's decision to terminate Plaintiff's employment was motivated by the School District's opposition to Plaintiff's viewpoint, which the School District labeled as misconduct.

57. Plaintiff is likely to succeed on the merits of her claims.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court enter a judgment declaring that Defendant Carlin's decision to terminate Plaintiff's employment violated the First Amendment because it was content-based;

C. That this Court enter a judgment declaring that Defendant Fisher's decision to terminate Plaintiff's employment violated the First Amendment because it was viewpoint-based;

D. That this Court enter a preliminary and permanent injunction reinstating Plaintiff's employment and restoring Plaintiff to her position and responsibilities;

E. That this Court enter a preliminary and permanent injunction forever enjoining Defendant and the various agents and employees of the School District from disciplining Plaintiff in the future

for posting the specific political statement at the center of this lawsuit in the exercise of her First Amendment rights;

F. That this Court enter a judgment for benefits and credit for job seniority for any time after the School District ceased to pay Plaintiff;

G. That this Court enter a judgment for front pay in the event reinstatement is not granted;

H. That this Court enter a judgment for pre-judgment and post-judgment interest at the highest lawful rate;

I. That this Court award Plaintiff nominal damages;

J. That this Court award Plaintiff her recoverable costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

K. That this Court award Plaintiff all other relief in law and in equity to which she may be entitled.

## COUNT II

### First Amendment Violation - Content and Viewpoint Discrimination

58. Plaintiff realleges the facts set forth in Paragraphs 1 through 58 and incorporates those facts into this Count by reference.

59. This is an action for declaratory relief and injunctive relief brought by the Plaintiff against Carlin under this Court's general jurisdiction and pursuant to 28. U.S.C. § 2201 and 42 U.S.C. § 1983.

60. Plaintiff is uncertain as to her rights and remedies following the termination of her employment in apparent violation of the First Amendment to the United States Constitution.

61. In posting the political comment concerning the death of Mr. Kirk, Plaintiff spoke as a private citizen.

62. Plaintiff's comments concerning the death of Mr. Kirk addressed matters of public concern.

63. Plaintiff's interest in speaking as a private citizen on matters of public concern necessarily outweighs Defendant's interests in advancing content- or viewpoint-discrimination.

64. Plaintiff's interest in speaking as a private citizen on matters of public concern outweighs Defendant's interest in content and viewpoint discrimination or imposing a heckler's veto.

65. Defendant Carlin terminated Plaintiff's employment because of Defendant's opposition to the content of Plaintiff's political statement, or because of public reactions to Plaintiff's message, or both.

66. Defendant Carlin never asserted that Plaintiff's political speech would upset the orderly operations of the School District, nor were such disruptions reasonably foreseeable given the limited publication of Plaintiff's private speech, the lack of knowledge by her co-workers, Plaintiff's position and job responsibilities, and the content of Plaintiff's speech.

67. Plaintiff's speech did not, in fact, disrupt the School District's operations.

68. Public reaction to speech is never a content-neutral basis for regulation. See Forsyth Cnty. v. Nationalist Movement, 505 U.S. 123, 134 (1992). A heckler's veto is a viewpoint-based limitation on expression and is impermissible under the First Amendment.

69. The Fist Amendment prohibits government officials from discriminating against speech "based on the ideas or opinions it conveys." Iancu v. Brunetti, 139 S. Ct. 2294, 2299 (2019); see also Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828-30 (1995)(action taken against a speaker because of "its message" is viewpoint discrimination). Viewpoint discrimination is an "egregious form of content discrimination" and is "presumptively unconstitutional." Rosenberger, 515 U.S. at 829-30.

70. Defendant Carlin's decision to terminate Plaintiff's employment is the product of viewpoint discrimination and is in retaliation for Plaintiff's speech.

71. Defendant Carlin's decision to terminate Plaintiff's employment was motivated by the opposition to Plaintiff's viewpoint.

72. Plaintiff is likely to succeed on the merits of her claims.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court enter a judgment declaring that Defendant Carlin's decision to terminate Plaintiff's employment violated the First Amendment because it was content-based.

C. That this Court enter a judgment declaring that Defendant Carlin's decision to terminate Plaintiff's employment violated the First Amendment because it was viewpoint-based.

D. That this Court enter a preliminary and permanent injunction reinstating Plaintiff's employment and restoring Plaintiff to her associated position and responsibilities;

E. That this Court enter a preliminary and permanent injunction forever enjoining Defendant and the various agents and employees of the School District from disciplining Plaintiff in the future for posting the specific political statement at the center of this lawsuit in the exercise of her First Amendment rights;

F. That this Court enter a judgment for benefits and credit for job seniority for any time after the School District ceased to pay Plaintiff;

G. That this Court enter a judgment for front pay in the event reinstatement is not granted;

H. That this Court enter a judgment for pre-judgment and post-judgment interest at the highest lawful rate;

I. That this Court award Plaintiff nominal damages;

J. That this Court award Plaintiff her recoverable costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

K. That this Court award Plaintiff all other relief in law and in equity to which she may be entitled.

## JURY TRIAL

Plaintiff demands trial by jury on all issues so triable as a matter of right.

/s/ Mark Herdman
Mark Herdman
Herdman & Vicari, P.A.
29605 U.S. Hwy 19 North, Suite 110
Clearwater, Florida 33761
(727) 785-1769
(727) 786-4107 (Fax)
Florida Bar No. 602566
Attorney for Plaintiff
mark@herdviclaw.com
suzanne@herdviclaw.com