UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BROOKE WOLD,

    Plaintiff,

v.                          Case No.: 2:25-cv-00994-KCD-NPM

DR. DENISE M. CARLIN,
SUPERINTENDENT OF LEE COUNTY,
FLORIDA SCHOOLS in her
Individual and Official Capacity,

    Defendant.

_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant, Dr. Denise M. Carlin, Superintendent of Lee County, Florida Schools, in her Individual and Official Capacity (hereinafter referred to as "Superintendent" or "Defendant"), respectfully opposes Plaintiff's Motion for Preliminary Injunction ("Motion"), and hereby states as follows:

1. This Court should deny Plaintiff's Motion. Plaintiff's Motion fails to establish the elements necessary to obtain mandatory injunctive relief, fails to support itself with sufficient competent evidence, and fails to establish that Defendant violated any of Plaintiff's alleged constitutional rights.

2. In opposition to Plaintiff's Motion, Defendant will establish:

    (a) Plaintiff does not have a substantial likelihood of success on the merits of her claim.

    (b) Plaintiff's social media post concerning the brutal assassination of Charlie Kirk caused both actual and threatened disruption to the School District of Lee County, Florida (the "District").

    (c) Defendant conducted a thorough and objective investigation and followed the District's policies and procedures without making any pre-determined outcomes.

    (d) Plaintiff's social meeting posting may have been committed within the scope of being a teacher for the District.

    (e) Defendant did nothing to prevent Plaintiff from exercising her First Amendment right to free speech and the decision to terminate her employment was based upon the actual and threatened disruption caused by Plaintiff.

3. As a result, this Court should decline to enter a mandatory preliminary injunction.

## MEMORANDUM OF LAW

The Court may enter a preliminary injunction if the movant demonstrates a substantial likelihood of success on the merits, the preliminary injunction is necessary to prevent irreparable injury, the threatened injury outweighs the harm the preliminary injunction would cause the non-movant, and the preliminary injunction would not be adverse to the public interest. See Parker v. State Bd. of Pardons and Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (reciting elements). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly

established the burden of persuasion as to each of the four prerequisites." La Potencia, LLC v. Chandler, 733 F.Supp.3d 1238, 1259 (S.D. Fla. 2024) (citing Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003)) (internal quotation marks omitted).

The mandatory injunctive relief sought by Plaintiff—the most extraordinary form of equitable relief—seeks to require Defendant to reinstate Plaintiff and to prevent further unspecified "retaliation." Such relief is not permitted and would not preserve the status quo; rather, granting such relief would do the exact opposite and would in fact change the status quo. Further, mandatory injunctive relief is particularly disfavored and should not be issued unless the facts and law clearly favor the moving party. Powers v. Secretary, Florida Department of Corrections, 691 Fed. App'x. 581 (11th Cir. 2017); Martinez v. Mathews, 544 F.2d 1233 (5th Cir. 1976).

## Introduction

Plaintiff filed a complaint under 42 U.S.C. Section 1983, claiming the Superintendent took adverse employment action against her in violation of her First Amendment rights. More specifically, Plaintiff alleges that she was unconstitutionally terminated from her employment after she posted comments on her social media page concerning the assassination of Charlie Kirk. Plaintiff contends that the comments or postings deserve First Amendment protection, and that the actions taken by the Superintendent violated her First Amendment rights. Plaintiff requests preliminary injunctive relief enjoining the Defendant from retaliating against her for the alleged protected speech. Plaintiff also seeks mandatory injunctive relief reinstating

Plaintiff on the same terms and conditions she enjoyed prior to the alleged unconstitutional termination.

The relief sought by the Plaintiff presents a unique but very important question: whether Rule 65 permits a federal court to order a state agency to rehire a terminated employee without competent substantial proof of a constitutional violation. Defendant asserts it does not. Indeed, Plaintiff's Motion does not meet the standard required for the entry of a mandatory preliminary injunction. Her Motion relies on her self-serving Declaration, conclusory and speculative statements, an unauthenticated social-media screenshot, and the notice she received from Defendant regarding her investigation—none of these materials offer competent evidence of a constitutional violation, irreparable injury, or any equitable basis for judicial intrusion and intervention to a sovereign agency's personnel decisions.

Furthermore, Plaintiff's alleged First Amendment violation claim is equally deficient. Under the <u>Pickering</u> framework, Plaintiff's alleged claims fail at every step, and Plaintiff cannot show she has a substantial likelihood of success on the merits of her claim.

## The Record Before the Court

Pursuant to Federal Rules of Civil Procedure 65(a) and Federal Rules of Evidence 602 and 802, at this stage of the proceeding, the Court may only consider competent admissible evidence—declarations, authenticated exhibits, and matters subject to judicial notice. The heavy burden required for the entry of a mandatory preliminary injunction rests solely on Plaintiff, and unsworn or unsupported assertions

and allegations do not suffice to meet this burden. Cunningham v. Adams 808 F.2d 815, 820 (11th Cir. 1987).

Plaintiff's Motion falls short of the requirements required for the entry of a mandatory preliminary injunction because her Motion relies almost entirely on her Declaration and the few unauthenticated screenshots—materials lacking foundation, personal knowledge, and evidentiary value. Of particular concern to the Court should be Plaintiff's Declaration, which offers conclusory statements and speculation, and which is lacking in factual support.

Defendant, by contrast, submitted several sworn declarations based upon first-hand knowledge and supported by authenticated exhibits. The declarations Defendant submitted conclusively demonstrate that (1) Plaintiff's comments coupled with her position as a teacher at a school in Lee County, Florida caused actual operational disruption and threatened disruption to other teachers and students and the school district as a whole; (2) the code of conduct and policies to which all employees are held are neutral and uniformly applied; (3) the investigation conducted into the posts made by the Plaintiff was not predicated upon the content of the postings; (4) the analysis required by Pickering, Connick, Garcetti and other cases was followed and Plaintiff's First Amendment rights were taken into consideration; and (5) complaints and media inquiries gave rise to a reasonable prediction of disruption under Waters v. Churchill, 511 U.S. 661, 673-75 (1994).

## Legal Standard

A preliminary injunction is an extraordinary remedy, and one which is never entered as a right. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a plaintiff must clearly establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest. Siegel v. Lepore, 234 F.3d 1163 at 1176 (11th Cir. 2000). If the plaintiff fails to prove any single element, the injunction should be denied. Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1247-48 (11th Cir. 2016). Furthermore, mandatory injunctions—those seeking affirmative action—are particularly disfavored and reserved for only the clearest cases. Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976); Powers v. Secretary, Florida Department of Corrections, 691 Fed. App'x. 581 (11th Cir. 2017). In the instant action, the status quo is Plaintiff's termination from employment; reinstatement would compel new state action and therefore alter, not preserve, that status.

Moreover, federal courts are required to exercise special restraint before enjoining state officials in their capacities. Rizzo v. Goode, 423, U.S. 362, 378 (1976).

## Plaintiff Cannot Demonstrate a Substantial Likelihood of Success on the Merits

Although it is clearly established that the state may not demote or terminate a public employee in retaliation for speech protected under the First Amendment, a public employee's right to freedom of speech is not absolute. Rankin v. McPherson,

483 U. S. 378,383 (1987); Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989). The First Amendment does not shield public employees from the consequences of their speech when their speech undermines the effectiveness, credibility, or public trust, on which their agencies depend. In the seminal case of Pickering v. Bd. of Educ., 391 U.S. 563 (1968), the Supreme Court held that a public employee's First Amendment rights are limited by the state's need to preserve efficient governmental functions.

> "[T]he state has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees."

Pickering, 391 U.S. at 568.   Claims by public employees alleging retaliatory discharge must follow the four-part Pickering analysis.   At the first stage, the court determines whether the employee's speech is speech on a matter of public concern.  Bryson, 888 F.2d at 1565-66. The court should examine the content, form, and context of the employee's speech to determine whether it addresses a matter of public concern. Id.   Second, if the speech addresses a matter of public concern, the court should then weigh the employee's First Amendment interests against "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568. Again, the context and circumstances of the employee's speech must be considered.   If the public employee

prevails on the balancing test, the fact-finder determines whether the employee's speech played a "substantial part" in the government's employment decision. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). Fourth and finally, if the employee shows that the speech was a substantial motivating factor in the state's employment decision, the state must prove by a preponderance of the evidence that it would have made the same decision without the protected conduct." Mt. Healthy, 429 U.S. at 286. Here, Plaintiff has not satisfied the first three prongs of the Pickering analysis and therefore she does not have a substantial likelihood of success on the merits.

Stage one of the analysis requires the Court to determine the threshold issue in Pickering, whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." Bryson 888 F.2d at 1565. Defendant does not contest that the brutal slaying of Charlie Kirk was a public issue. However, just because the speech involved an issue of public concern does not end the analysis. In Garcetti v. Ceballos, 547 U.S. 410, 416-17 (2006), the Supreme Court clarified the first prong of the analysis by stating that a public employee cannot meet the threshold for proving a First Amendment violation simply by showing that the speech in question dealt with a matter of public concern. Courts have routinely and consistently denied First Amendment protection to speech made by an employee if it was made in the scope of their employment. See also Moss v. City of Pembroke Pines, 782 F.3d 613 (11th Cir. 2015); Alves v. Bd. of Regents of the Univ. System of Ga., 804 F.3d 1149 (11th Cir. 2015).

In the instant lawsuit, even though Charlie Kirk's assassination was likely a topic of public concern, Plaintiff's comments do not warrant First Amendment protection where the comments were made by Plaintiff within the scope of her role as a teacher for the District. Plaintiff's social media post was made on her Facebook page, which was allegedly private. Plaintiff fails to mention, however, that her Facebook page had a link to another social media account she maintained on which she identified herself as a "Teacher at School District of Lee County-School District of Lee County." See Declaration of Denise M. Carlin, ¶1. Teachers are trained and concerned about gun violence in schools, and Plaintiff seems to be particularly attuned to this issue. Indeed, if there was any question about this, one need only look at Plaintiff's Declaration. In her Declaration (Doc. #9), Plaintiff references a school shooting in which students were killed on the same day she made her post about Mr. Kirk. This reference in the Plaintiff's declaration connects her comments regarding Charlie Kirk to a school shooting, which connects Plaintiff's post to her job as a teacher at the District. Because of this connection, it is possible Plaintiff was not speaking as a private citizen, and there is insufficient record evidence to conclusively decide this element of the analysis.

Even if Plaintiff can overcome the first prong of the Pickering analysis, she cannot overcome the second prong. The second prong of the Pickering analysis involves a balancing test weighing the First Amendment interests of the employee against the interest of the District in promoting the efficiency of the public services it performs through its employees. Rankin, 483 U.S. 378 at 384-389; See also Bryson,

888 F.2d at 1565. In <u>Rankin</u>, the Supreme Court stated that the state interest element of the test focuses on the effective functioning of the public employer's enterprise and in promoting the efficiency of the public services it provides. The government as an employer has far broader powers than the government as a sovereign. <u>Waters v. Churchill</u>, 511 U.S. 661, 672 (1994). It seems obvious, but the Supreme Court found it important to articulate that a public employer may, for example, consistently with the First Amendment, prohibit its employees from being "rude to customers," which is an extremely vague standard. <u>Waters</u>, 511 U.S. at 673.

      Here, the District must be given deference when its interest in ensuring the safety of teachers, students, and the orderly operation of the school district as a whole is at stake. This was specifically acknowledged by the Supreme Court in <u>Waters</u> when the Court stated "[l]ikewise, we have consistently given greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large."

      In the instant case, Defendant has attached three detailed Declarations which identify and highlight the disruptive effect Plaintiff's social media post had on the District. See Declaration of Denise M. Carlin; Declaration of Dr. Shanna Johnston; and Declaration of Michael Harris. These Declarations go into significant detail as to the actual and perceived or threatened disruptions caused by Plaintiff's social media post. To the contrary, Plaintiff's Declaration mentions nothing about the disruption to the District caused by her social media post, as if Plaintiff would have this Court believe nothing happened as a result of her post. Yet, Plaintiff knows this to be untrue.

If Plaintiff's posting had no disruptive effect, why did Plaintiff remove the posting almost immediately? How did so many people learn about it and contact the District? Why would anyone complain if it wasn't disruptive? Why would the media write numerous articles and why would people show up in protest? The facts of this case as contained in Defendant's three Declarations provide the only competent record evidence regarding the disruption caused by Plaintiff's social media post. Plaintiff has failed to sufficiently show her free speech interest outweighs the District's interest in the effective and efficient fulfillment of its responsibilities, which prevents the entry of a mandatory injunction. Simply stated, the balancing test mandated by <u>Pickering</u> and its progeny requires something more than what Plaintiff has submitted on this element, and Plaintiff's Motion fails.

Notably, there is very recent precedent on this issue from the United States District Court, Northern District of Florida. In almost an identical case, Judge Mark Walker held that the extraordinary remedy of mandatory injunctive relief was not warranted, focusing on the proof provided by the defendant employer and the lack of proof provided by the plaintiff employee to support her request for an injunction. <u>Brown v. Young and Tucker</u>, No. 4:25-cv-419-MW/MJF, 2025 WL 3171160, *1 (N.D. Fla. Nov. 13, 2025). The employer's proof, in the form of an unrebutted declaration, showed that the plaintiff's posts about Mr. Kirk's assassination resulted in a "swift and largely negative reaction from the public…disrupt[ion] of agency operations… diversion of staff and resources to manage responses, and raised legitimate concerns about the agency's credibility and public trust." <u>Brown</u>, 2025 WL

3171160 at *4. On this record, Judge Walker held that the remedy of a preliminary junction was inappropriate. All of the factors considered by Judge Walker in <u>Brown</u> exist in the instant action. As such, the result should be the same here.

Indeed, the threat to students at the District was a significant concern to Defendant. The disruption and threat of disruption to the District cannot be ignored or underestimated. Parents entrust their children to the teachers and to the District. Teachers and students alike are trained yearly on what to do in crisis situations. It cannot be underestimated what may have happened if Defendant had not acted or if she had ignored the social media posting made by Plaintiff and ignored the complaints and outrage.

Assuming Plaintiff's post involved protected speech made by a citizen on a matter of public concern, Defendant clearly had an interest in maintaining credibility and neutrality as well as protecting other teachers, students, and the District as a whole. When an employee's public statement threatens those values and erodes public trust, management may act to protect institutional integrity. <u>Pickering</u>, 391 U.S. at 568; <u>Waters</u>, 511 U.S. at 673-675. Compare this case to <u>Rankin</u>. In <u>Rankin</u>, the Supreme Court protected an offhand, private remark made to a single coworker. In the instant case, Plaintiff's public post was widely disseminated and generated substantial attention. In this case, Defendant followed measured and thoughtful procedures and conducted a month-long investigation before taking any action. This measured response was designed to preserve public confidence, in no way related to censorship.

The 11th Circuit precedent confirms that public employers may discipline employees whose speech compromises operational effectiveness. In <u>Alves</u>, the Eleventh Circuit upheld discipline where faculty statements eroded collegiality and trust. <u>Alves</u>, 804 F.3d 1149 at 1161-66. In <u>Moss</u>, 782 F.3d at 621-22, it did the same when officer speech undermined credibility. Those cases confirm that Defendant in this case acted well within her authority to safeguard integrity and effectiveness.

As it relates to the third prong of the <u>Pickering</u> analysis, Plaintiff cannot prove causation by reason of the analysis in <u>Waters</u>. The Supreme Court in <u>Waters</u> recognized that public employers may at times make decisions which punish protected speech. Further, government employers should be permitted to use personnel procedures which differ from those procedures used by courts without fear that the differences may lead to liability. Public employers must reach their conclusions using good faith as opposed to pretext. Courts should view the decisions of public employers as the employer reasonably found them to be. The record is devoid of any factual evidence to suggest that Defendant acted out of disagreement with Plaintiff's viewpoint as opposed to Defendant's Declaration which explains that Plaintiff's statement with an incendiary post foreseeably caused disruption and reputational harm. See <u>Bryson</u>, 888 F.2d at 1566-68.

Lastly, as it relates to comments made by Plaintiff regarding Charlie Kirk, <u>Brown v. Young</u> is instructive. In denying the motion for temporary injunction in <u>Brown</u>, Judge Walker focused on the extraordinary affirmative relief sought by the plaintiff and the lack of sufficient evidence justifying that extraordinary relief at such

an early stage in the case. See Brown, 2025 WL 3171160 at *4 (nothing that the court could not "conclude on the sparse record that the public's negative reaction was not disruptive enough to justify" the employer's action) (citing Labriola v. Miami-Dade Cty., 142 F.4th 1305, 1310 (11th Cir. 2025)); Moss, 782 F.3d at 622. The same analysis applies here—Plaintiff has simply failed to submit sufficient evidence to show she is entitled to the extraordinary relief of a temporary injunction, and her Motion should be denied.

## CONCLUSION

In view of the above and the balancing test required by Pickering and its progeny, this Court should not enter a preliminary injunction in this action because Plaintiff has failed to meet her burden to show she is entitled to such extraordinary relief.

Pursuant to Local Rule 6.02(c), Defendant attaches all papers/exhibits/declarations on which Defendant relies in support of her Opposition to Plaintiff's Motion for Preliminary Injunction.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 18, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to parties of record.

>BOY AGNEW POTANOVIC MILLER, PLLC
>*Trial Attorneys for Defendant*
>23 Barkley Circle
>Fort Myers, Florida 33907
>239.208.6500 (telephone)
>239.208.6511 (facsimile)
>Email:  doug@bapfirm.com
>Email:  johnm@bapfirm.com
>Secondary email: service@bapfirm.com
>
>By:  */s/ Douglas B. Szabo*
>         Douglas B. Szabo (Lead Counsel)
>         Florida Bar No.  710733
>         John M. Miller
>         Florida Bar No.  61488