UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BROOKE WOLD,

     Plaintiff,

v.                        Case No.: 2:25-cv-00994-KCD-NPM

DR. DENISE M. CARLIN,
SUPERINTENDENT OF LEE COUNTY,
FLORIDA SCHOOLS in her
Individual and Official Capacity,

     Defendant.

_____/

## DECLARATION OF DENISE M. CARLIN

     I, Dr. Denise M. Carlin, declare, under penalty of perjury, that the following is true and correct based on my personal knowledge and review of the official records of the School District of Lee County, Florida. Any and all attachments to my declaration are true and correct copies of records of the School District of Lee County, Florida, as they are kept in the normal course of business:

1. I serve as Superintendent of the School District of Lee County, Florida (the "District"). In that role, my duties and responsibilities include being the Chief Executive Officer and Secretary for the Lee County School Board, with duties as prescribed by the Florida Constitution and relevant state statutes.

2. I have personal knowledge of the circumstances surrounding the termination of Brooke Wold's employment and of the events leading up to and following that

decision. I also have personal knowledge of the investigation conducted by the District as it relates to the termination of Brooke Wold's employment. My statements are made on first-hand involvement, direct observation, and review of agency records maintained in the ordinary course of business. My knowledge also includes statements from others who are required to report to me and whom I supervise.

3. On or about September 11, 2025, Professional Standards received information that Brooke Wold, a teacher at Lemuel Teal Middle School ("LTMS"), may have violated the Principles of Professional Conduct for the Education Profession in Florida, the Teachers Association of Lee County ("TALC") contract, and Board Policies. All of the above stemmed from a social media post made by Brooke Wold related to an image of Charlie Kirk and his assassination. A true and correct copy of the posting as sent to the District is attached hereto as Exhibit 1. Even though Ms. Wold alleges her post concerning Mr. Kirk was made on her Facebook account and that her Facebook account is private, there was a link on her Facebook account to other social media accounts held by and used by Ms. Wold in which she identified herself as a teacher at the School District of Lee County, as evidenced by Exhibit 1.

4. On September 10, 2025 at approximately 7:27 p.m., Assistant Principal McGinley texted Melissa Layner, who is the principal at LTMS, advising Principal Layner that Ms. Wold made a Facebook post regarding the assassination of Charlie Kirk. At the time Principal Layner became aware of

what happened, at least one other person on Facebook had already shared the initial post made by Ms. Wold. Principal Layner contacted Ms. Wold on the evening of September 10th to make her aware that her post was going viral.

5. The night Ms. Wold made her post, Principal Layner, Principal at LTMS, received three emails at her Lee Schools Account concerning the social media post made by Ms. Wold. On Friday, September 11, 2025, the LTMS Facebook Messenger app also received one complaint regarding Ms. Wold's post, and Principal Layner also received one direct phone call concerning the posting.

6. Because of the complaints, the District followed its standard policies and procedures by beginning to collect information and starting an investigation. Ms. Wold's investigation was assigned to Professional Standards for handling, which is standard operating procedure. Following standard policies and procedures, Ms. Wold was put on paid administrative leave beginning September 11, 2025.

7. As for the Professional Standards investigation, three complaint forms were also submitted regarding the social media post made by Ms. Wold. True and correct copies of the complaints are attached as Exhibit 2.

8. Several emails were also sent complaining about the social media posting made by Ms. Wold, and those email complaints were sent to the Superintendent's email address. True and correct copies of those complaints are attached as Exhibit 3.

9. Within days of the posting made by Ms. Wold, various media organizations began reporting on the event and comments made by Ms. Wold. Ms. Wold's name appeared in the media articles and drew further attention to the matter.

10. Additionally, the District's voicemailbox received several voicemail complaints regarding the social media postings made by teachers surrounding the assassination of Mr. Kirk.

11. Teachers for the District are all provided a copy of the policy manual relating to outside activities of staff. Ms. Wold received a copy of this policy. A true and correct copy of the policy is attached as Exhibit 4. That policy provides that staff have "the constitutional right to express political and other opinions as citizens." Furthermore, the policy manual also provides "staff member should refrain from expressions that disrupt the efficient operation of the school and/or interfere with the maintenance of discipline by school officials."

12. Following the District's policies and procedures, the investigation surrounding the postings made by Ms. Wold about Charlie Kirk were transferred to the Outcome Review Team ("ORT") for handling. The purpose of the ORT is to review the investigative findings and renders a disciplinary recommendation for the Superintendent's consideration. There are no predetermined results. Those involved in the ORT process consider all factors relevant to making an informed decision that respects and protects the rights of all parties involved, including the teacher involved and the District. The most important factor of the ORT is to determine the level of disruption, if any, caused by the alleged wrongful

conduct. The level of disruption relates to where the teacher teaches, disruption to other teachers and students, and potential disruption to the District as a whole. As it relates to the investigation regarding Ms. Wold, the process took several weeks while all information was gathered to determine an appropriate outcome, taking into consideration both the actual and threatened disruption, if any, caused by Ms. Wold's social media post about the assassination of Mr. Kirk.

13. After thoroughly considering all the facts and circumstances, and discussing amongst the team members of the ORT, the information was provided to the Superintendent, who was then tasked with making a recommendation to the School Board of Lee County (the "School Board"). As it relates to Ms. Wold, the Superintendent, after thorough and thoughtful consideration of all the factors, primarily focusing on the actual and threatened disruption caused by Ms. Wold's acts and actions, recommended Ms. Wold's contract be terminated. This recommendation was subsequently approved by the School Board.

14. The ORT team and the Superintendent were specifically instructed during the investigation regarding the Supreme Court of the United States decision in Pickering v. Board of Education, and cases following that decision. They utilized the balancing test set forth in those decisions to evaluate the appropriate outcome of the Wold investigation. At no point in time did the ORT or the Superintendent intend to or consider taking action for purposes of violating any First Amendment rights held by Ms. Wold. This is evidenced by the deliberative

and thoughtful process followed by the ORT and the Superintendent. Additionally, it should be noted that there were nine other investigations opened regarding teachers making posts concerning the assassination of Mr. Kirk, Ms. Wold was the only teacher investigated who was terminated. There was at least one other recommendation to terminate the employment of another teacher, but the other teacher voluntarily retired. This was because during the investigative process and discussion, it was determined that Ms. Wold's conduct caused and led to significantly more actual and threatened disruption than any of the other teachers being investigated, not including any teachers who voluntarily retired.

15. The decision to terminate Ms. Wold's employment prevented disruption to the school where she worked, to other teachers at that school, to students at that school, and it protected actual and further anticipated disruption to the District as a whole.

16. The volume and tone of the complaints received concerning Ms. Wold's post disrupted the District's operations, required diversion of staff and resources to manage responses and cover her duties during the investigation, and raised legitimate concerns about the District's credibility and public trust.

17. The District's Professional Standards policies apply equally to all employees, irrespective of viewpoint. The policies prohibit conduct or public statements that reasonably appear to compromise the District's integrity, neutrality, or

ability to perform its mission. This policy is content-neutral and has been enforced consistently.

18. At no point did the ORT team or the Superintendent take issue with Ms. Wold's political opinion or seek to suppress her viewpoint. The decision to terminate her contract was based solely on the reasonable, thoughtful, and considerate assessment that the widespread public association of her social media post with the District had caused actual and foreseeable disruption and reputational harm inconsistent with the District's mission.

19. Both before and after the investigation of Ms. Wold, the District has applied its Professional Standards policies uniformly and without regard to the personal political beliefs of any employee.

I declare under penalty of perjury that the foregoing is true and correct.

_Denise M. Carl_

Denise M. Carlin, Superintendent

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 18, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to parties of record.

BOY AGNEW POTANOVIC MILLER, PLLC
Trial Attorneys for Defendant

Page 7 of 8

23 Barkley Circle
Fort Myers, Florida 33907
239.208.6500 (telephone)
239.208.6511 (facsimile)
Email:   doug@bapfirm.com
Email:   johnm@bapfirm.com
Secondary email: service@bapfirm.com

By:    */s/ Douglas B. Szabo*
     Douglas B. Szabo (Lead Counsel)
     Florida Bar No.   710733
     John M. Miller
     Florida Bar No.   61488



# Brooke Wold

## Teacher at School District of Lee County

School District of Lee County  ·  Florida Gulf
Coast University

Lehigh Acres, Florida, United States  ·  **Contact Info**
3 followers  ·  3 connections

 **See your mutual connections**

**Join to view profile**      ◁  **Message**

# About


Composite Exhibit 1
Page 1



1h · 🌐

Remember Charlie did say, "Some gun deaths are worth it"

👍 15                    14 comments  2 shares

 Like           Comment           Share

 **Brooke Wold** ●                    • • •
1h · 🌐

I pray Charlie receives whatever God sees fit😀



≡ CNN US                    Subscribe

● LIVE UPDATES

# Political activist and Trump ally Charlie Kirk shot at Utah event

By Elise Hammond, Maureen Chowdhury, Aditi Sangal, Dalia Faheid, Elizabeth Wolfe and Tori B. Powell, CNN

Composite Exhibit 1
Page 2



Thank You,
Tyler Mattingly


On Thu, Sep 11, 2025 at 11:39 AM Collins, Kimberly <KimberlyCo@leeschools.net> wrote:

Good Morning,


Thank you for bringing this to our attention.

Composite Exhibit 1
Page 3

## Harris, Michael

| | |
|---|---|
| **From:** | notification@leeschools.net |
| **Sent:** | Wednesday, September 10, 2025 10:25 PM |
| **To:** | Harris, Michael |
| **Subject:** | Professional Standards Investigation Complaint Form 2025-09-10 10:24 PM(EST) Submission Notification |

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Professional Standards Investigation Complaint Form 2025-09-10 10:24 PM(EST)** was submitted by Guest on 9/10/2025 10:24:52 PM (GMT-05:00) US/Eastern

| Name | Value |
|---|---|
| Location | Social media |
| Date of request | 2025-09-10 |
| Site Administrator | |
| County Department | |
| Location Phone | 8509737732 |
| Location Fax | |
| Date and Time of Incident | 2025-09-10T17:00 |
| Incident Occurred | Off Campus |
| Type of Incident | Hostile and hateful behavior |
| Complainant First Name | Leandra |
| Complainant Last Name | Land |
| Email address of Complainant | leandraland0315@icloud.com |
| Complainant Other | |
| Complainant Other | |
| First Name of Accused | Brooke |
| Last Name of Accused | Wold |
| Position of Accused | Teacher |
| Contract Status | |
| Explanation | I am submitting this complaint regarding Brooke Wold, a teacher employed with the School District of Lee County. On September 10, 2025, Ms. Wold made multiple public posts and comments on social media concerning the shooting of political activist Charlie Kirk. These posts included: • Mocking remarks such as "I pray Charlie receives whatever God sees fit" accompanied by a smiling emoji. • Commenting "sounds like he made a sacrifice that was worth it for him" after being informed that Mr. Kirk had died. • Sharing a news report of the incident |

Composite Exhibit 2
Page 1

while making statements that trivialized gun violence. As you are aware, the District's Social Media Guidelines prohibit employees from making derogatory, mocking, or unprofessional comments that reflect negatively on the School District. These posts are clearly tied to Ms. Wold's identity, which publicly lists her as a Teacher at the School District of Lee County on LinkedIn and other platforms. This conduct is: • Unprofessional and damaging to the reputation of the District. • In direct conflict with the District's social media standards requiring staff to be positive ambassadors. • A violation of ethical expectations for educators entrusted with serving children and families in Lee County. I request that the District investigate this matter and take appropriate action in accordance with policy.

**Outside agency contacted** No

**Name of Agency**

**Agency Contact Person**

**Agency Phone Number**

**Name of Agency2**

**Agency Contact Person2**

**Agency Phone Number2**

**Name of Agency3**

**Agency Contact Person3**

**Agency Phone Number3**

**Signature** Leandra Land

**Date** 2025-09-10

To view this form submission online, please follow the link below:

https://www.leeschools.net/form/one.aspx?objectId=222328163&contextId=4635567&returnto=submissions

Composite Exhibit 2
Page 2

**Harris, Michael**

---

| | |
|---|---|
| **From:** | notification@leeschools.net |
| **Sent:** | Wednesday, September 10, 2025 10:22 PM |
| **To:** | Harris, Michael |
| **Subject:** | Professional Standards Investigation Complaint Form 2025-09-10 10:21 PM(EST) Submission Notification |

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Professional Standards Investigation Complaint Form 2025-09-10 10:21 PM(EST)** was submitted by Guest on 9/10/2025 10:21:48 PM (GMT-05:00) US/Eastern

| Name | Value |
|---|---|
| Location | Lee County |
| Date of request | 2025-09-10 |
| Site Administrator | |
| County Department | Lee County |
| Location Phone | |
| Location Fax | |
| Date and Time of Incident | |
| Incident Occurred | Off Campus |
| Type of Incident | Unprofessional conduct on social media |
| Complainant First Name | Brandilyn |
| Complainant Last Name | C |
| Email address of Complainant | Sweetbstreatslc@gmail.com |
| Complainant | Parent |
| Complainant Other | |
| First Name of Accused | Brooke |
| Last Name of Accused | Wold |
| Position of Accused | Teacher |
| Contract Status | |
| Explanation | Brooke Wolf who works as a licensed Teacher in Lee County made posts and comments on social media (Facebook) praising the death of Charlie Kirk. She was unprofessional. Screenshots of her post and comments are being circulated across Facebook. This is disgusting behavior toward human life. She should be held responsible for her actions. |
| Outside agency contacted | |
| Name of Agency | |

**Agency Contact Person**

**Agency Phone Number**

**Name of Agency2**

**Agency Contact Person2**

**Agency Phone Number2**

**Name of Agency3**

**Agency Contact Person3**

**Agency Phone Number3**

**Signature** Brandilyn

**Date** 2025-09-10

To view this form submission online, please follow the link below:

https://www.leeschools.net/form/one.aspx?objectId=222328161&contextId=4635567&returnto=submis
sions

**Harris, Michael**

| | |
|---|---|
| **From:** | notification@leeschools.net |
| **Sent:** | Wednesday, September 10, 2025 10:03 PM |
| **To:** | Harris, Michael |
| **Subject:** | Professional Standards Investigation Complaint Form 2025-09-10 10:02 PM(EST) Submission Notification |

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Professional Standards Investigation Complaint Form 2025-09-10 10:02 PM(EST)** was submitted by Guest on 9/10/2025 10:02:38 PM (GMT-05:00) US/Eastern

| Name | Value |
|---|---|
| Location | Social media |
| Date of request | 2025-09-10 |
| Site Administrator | Unknown |
| County Department | Unknown |
| Location Phone | Unknown |
| Location Fax | Unknown |
| Date and Time of Incident | 2025-09-10T21:54 |
| Incident Occurred | Off Campus |
| Type of Incident | Social media unprofessionalism |
| Complainant First Name | Cal |
| Complainant Last Name | Jordan |
| Email address of Complainant | caljordan40@gmail.com |
| Complainant | Other |
| Complainant Other | Concerned Citizen |
| First Name of Accused | Brooke |
| Last Name of Accused | Wold |
| Position of Accused | Teacher |
| Contract Status | Unknown |
| Explanation | I am submitting this complaint regarding Brooke Wold, a teacher employed with the School District of Lee County. On September 10, 2025, Ms. Wold made multiple public posts and comments on social media concerning the shooting of political activist Charlie Kirk. These posts included: • Mocking remarks such as "I pray Charlie receives whatever God sees fit" accompanied by a smiling emoji. • Commenting "sounds like he made a sacrifice that was worth it for him" after being informed that Mr. Kirk had died. • Sharing a news report of the incident |

Composite Exhibit 2
Page 5

while making statements that trivialized gun violence. As you are aware, the District's Social Media Guidelines prohibit employees from making derogatory, mocking, or unprofessional comments that reflect negatively on the School District. These posts are clearly tied to Ms. Wold's identity, which publicly lists her as a Teacher at the School District of Lee County on LinkedIn and other platforms. This conduct is: • Unprofessional and damaging to the reputation of the District. • In direct conflict with the District's social media standards requiring staff to be positive ambassadors. • A violation of ethical expectations for educators entrusted with serving children and families in Lee County. I request that the District investigate this matter and take appropriate action in accordance with policy. Screenshots of the posts and comments in question are attached for your review.

**Outside agency contacted** No

**Name of Agency**

**Agency Contact Person**

**Agency Phone Number**

**Name of Agency2**

**Agency Contact Person2**

**Agency Phone Number2**

**Name of Agency3**

**Agency Contact Person3**

**Agency Phone Number3**

**Signature** Cal Jordan

**Date** 2025-09-10

To view this form submission online, please follow the link below:

https://www.leeschools.net/form/one.aspx?objectId=222328109&contextId=4635567&returnto=submissions

Composite Exhibit 2
Page 6

**Harris, Michael**

| | |
|---|---|
| **From:** | Superintendent |
| **Sent:** | Thursday, September 11, 2025 11:37 AM |
| **To:** | Harris, Michael |
| **Cc:** | Mathews, Holly |
| **Subject:** | FW: Concern Regarding Unprofessional Social Media Conduct by Staff Member |

## Kim Collins

**Office Manager – Superintendent's Office**
2855 Colonial Blvd, Fort Myers, FL 33966
**o:** 239-337-8301
kimberlyco@leeschools.net
www.leeschools.net

**THE SCHOOL DISTRICT OF LEE COUNTY**

    

Sunshine Law and Public Records: Most Email communication sent or received by District staff are considered public records that must be retained and, upon request, made available to the public and media.

**From:** BoardOffice <BoardOffice@LeeSchools.net>
**Sent:** Thursday, September 11, 2025 11:05 AM
**To:** Daniel Seay <skydivemordor@gmail.com>; BoardOffice <BoardOffice@LeeSchools.net>; BoardMembers <BoardMembers@LeeSchools.net>; Superintendent <Superintendent@LeeSchools.net>
**Cc:** Mathews, Holly <HollyLM@LeeSchools.net>; Collins, Kimberly <KimberlyCo@LeeSchools.net>
**Subject:** RE: Concern Regarding Unprofessional Social Media Conduct by Staff Member

Good morning,

Thank you for your email.  I have copied the Members of the School Board and the Superintendent of Schools, Dr. Denise Carlin, in this response so they are aware of your concern.

Respectfully,

Office of the School Board
2855 Colonial Blvd, Fort Myers, FL 33966
o: 239.337.8243 | f: 239.337.8378
www.leeschools.net
THE SCHOOL DISTRICT OF LEE COUNTY

SUNSHINE LAW & PUBLIC RECORDS CAUTION: Most Email communications made or received by District staff are considered public records that must be retained and upon request, made available to the public and media.  There should be no expectation of privacy.

**From:** Daniel Seay <skydivemordor@gmail.com>
**Sent:** Wednesday, September 10, 2025 8:39 PM
**To:** BoardOffice <BoardOffice@LeeSchools.net>
**Subject:** Concern Regarding Unprofessional Social Media Conduct by Staff Member

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Dear Lee County School District Administration,**

I am writing to express serious concern regarding inappropriate and offensive remarks made by one of your staff members, Brooke Wold, on social media concerning the tragic death of Charlie Kirk. As an employee of the Lee County School District, Ms. Wold's public statements reflect on the values and reputation of the district as a whole. It is deeply troubling to see an educator, entrusted with shaping young minds, publicly celebrating the loss of a human life, particularly in response to a violent act.

The Lee County School District should uphold principles of compassion, respect, and unity, especially in the face of tragedy. We must stand against violence and promote empathy, regardless of differing opinions or political affiliations. Ms. Wold's remarks fail to model these values and undermine the district's responsibility to foster an environment of integrity and care for all.

I urge the administration to address this matter promptly and ensure that staff members exemplify the compassion and respect expected of educators. The representation of Lee County should reflect a commitment to higher standards, and I respectfully request a review of Ms. Wold's conduct to determine whether her actions align with the district's mission and values.

Thank you for your attention to this serious matter. I trust that the Lee County School District will take appropriate steps to address this issue and uphold the principles of empathy and professionalism.

**God Bless**

**Sincerely,**

**Daniel Seay**

**Phone: 2393085860**

Composite Exhibit 3
Page 2

**Harris, Michael**

| | |
|---|---|
| **From:** | Superintendent |
| **Sent:** | Thursday, September 11, 2025 11:34 AM |
| **To:** | Harris, Michael |
| **Cc:** | Mathews, Holly |
| **Subject:** | FW: Teacher in Lehigh School |

Kim Collins
Office Manager – Superintendent's Office
2855 Colonial Blvd, Fort Myers, FL 33966
o: 239-337-8301
kimberlyco@leeschools.net
www.leeschools.net
THE SCHOOL DISTRICT OF LEE COUNTY

Sunshine Law and Public Records: Most Email communication sent or received by District staff are considered public records that must be retained and, upon request, made available to the public and media.

-----Original Message-----
From: Melissa Friess <liss608@yahoo.com>
Sent: Thursday, September 11, 2025 11:29 AM
To: Superintendent <Superintendent@LeeSchools.net>
Subject: Teacher in Lehigh School

Caution: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

I am very concerned with one of the teachers in Lehigh Acres named Brooke Wold. With the recents events that took place yesterday, she posted things on social media that are not professional. She is teaching our youth and praising the killing that happened yesterday! This is disgusting!! Something needs to be done! I do not want my child around that kind of mentor!!
Sent from my iPhone

**Harris, Michael**

| | |
|---|---|
| **From:** | Collins, Kimberly |
| **Sent:** | Thursday, September 11, 2025 2:34 PM |
| **To:** | Harris, Michael |
| **Cc:** | Mathews, Holly |
| **Subject:** | FW: Brooke Wold |

Kim Collins

**Office Manager – Superintendent's Office**
2855 Colonial Blvd, Fort Myers, FL 33966
**o:** 239-337-8301
kimberlyco@leeschools.net
www.leeschools.net

**THE SCHOOL DISTRICT OF LEE COUNTY**

    

Sunshine Law and Public Records: Most Email communication sent or received by District staff are considered public records that must be retained and, upon request, made available to the public and media.

**From:** Cameron Heise <milan29cfj@gmail.com>
**Sent:** Thursday, September 11, 2025 12:11 PM
**To:** Superintendent <Superintendent@LeeSchools.net>
**Subject:** Brooke Wold

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

As a resident of collier county, I would like to believe that our neighboring county wouldn't support school teachers who glorify the death of any individual. Regardless of their political beliefs. A member of your staff is trending, and it isn't a great look.

Composite Exhibit 3
Page 4

## Harris, Michael

| | |
|---|---|
| **From:** | notification@leeschools.net |
| **Sent:** | Thursday, September 11, 2025 10:40 AM |
| **To:** | Harris, Michael |
| **Subject:** | Professional Standards Investigation Complaint Form 2025-09-11 10:39 AM(EST) Submission Notification |

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Professional Standards Investigation Complaint Form 2025-09-11 10:39 AM(EST)** was submitted by Guest on 9/11/2025 10:39:32 AM (GMT-05:00) US/Eastern

| Name | Value |
|---|---|
| **Location** | Florida Gulf Coast University |
| **Date of request** | 2025-09-11 |
| **Site Administrator** | |
| **County Department** | |
| **Location Phone** | 9414574811 |
| **Location Fax** | |
| **Date and Time of Incident** | 2025-09-11T10:37 |
| **Incident Occurred** | Off Campus |
| **Type of Incident** | Hatred |
| **Complainant First Name** | Casie |
| **Complainant Last Name** | Landmark |
| **Email address of Complainant** | casielandmark34@gmail.com |
| **Complainant** | Other |
| **Complainant Other** | |
| **First Name of Accused** | Brooke |
| **Last Name of Accused** | Wold |
| **Position of Accused** | Teacher |
| **Contract Status** | |
| **Explanation** | Spewing hatred toward the death of Charlie Kirk on Facebook. |
| **Outside agency contacted** | No |
| **Name of Agency** | |
| **Agency Contact Person** | |
| **Agency Phone Number** | |
| **Name of Agency2** | |
| **Agency Contact Person2** | |

Composite Exhibit 3
Page 5



**Agency Phone Number2**

**Name of Agency3**

**Agency Contact Person3**

**Agency Phone Number3**

**Signature** Casie Landmark

**Date** 2025-09-11

To view this form submission online, please follow the link below:

https://www.leeschools.net/form/one.aspx?objectId=222351839&contextId=4635567&returnto=submissions

Composite Exhibit 3
Page 6

## Harris, Michael

| | |
|---|---|
| **From:** | notification@leeschools.net |
| **Sent:** | Thursday, September 11, 2025 9:47 AM |
| **To:** | Harris, Michael |
| **Subject:** | Professional Standards Investigation Complaint Form 2025-09-11 09:47 AM(EST) Submission Notification |

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Professional Standards Investigation Complaint Form 2025-09-11 09:47 AM(EST)** was submitted by Guest on 9/11/2025 9:47:03 AM (GMT-05:00) US/Eastern

| Name | Value |
|---|---|
| **Location** | Social Media Post by Brooke Wold |
| **Date of request** | 2025-09-11 |
| **Site Administrator** | Lee county School District |
| **County Department** | Lee County School District |
| **Location Phone** | 32040 |
| **Location Fax** | |
| **Date and Time of Incident** | |
| **Incident Occurred** | Off Campus |
| **Type of Incident** | Social Media Post |
| **Complainant First Name** | Chris |
| **Complainant Last Name** | Kneessi |
| **Email address of Complainant** | kneessi44588@iclooud.com |
| **Complainant** | Other |
| **Complainant Other** | |
| **First Name of Accused** | Brooke |
| **Last Name of Accused** | Wold |
| **Position of Accused** | Derogatory and Celbratory of death social media post |
| **Contract Status** | |
| **Explanation** | Brooke Wold made social media posts celebrating the death of Cinservative Politcal Activist Charlie Kirk being shot and killed at one of his campus rallies. This type of person should not be educating the youth of our country. It is reprehensible behavior from an educator of any level. |
| **Outside agency contacted** | No |
| **Name of Agency** | |

Composite Exhibit 3
Page 7

**Agency Contact Person**
**Agency Phone Number**
**Name of Agency2**
**Agency Contact Person2**
**Agency Phone Number2**
**Name of Agency3**
**Agency Contact Person3**
**Agency Phone Number3**
**Signature** Chris Kneessi
**Date** 2025-09-11

To view this form submission online, please follow the link below:

https://www.leeschools.net/form/one.aspx?objectId=222349648&contextId=4635567&returnto=submis
sions

**Harris, Michael**

| | |
|---|---|
| **From:** | Collins, Kimberly |
| **Sent:** | Thursday, September 11, 2025 2:33 PM |
| **To:** | Harris, Michael |
| **Cc:** | Mathews, Holly |
| **Subject:** | FW: Concerning message from your staff member: Brooke Wold - Lemuel Teal Middle |

## Kim Collins

**Office Manager – Superintendent's Office**
2855 Colonial Blvd, Fort Myers, FL 33966
**o:** 239-337-8301
kimberlyco@leeschools.net
www.leeschools.net

**THE SCHOOL DISTRICT OF LEE COUNTY**

    

Sunshine Law and Public Records: Most Email communication sent or received by District staff are considered public records that must be retained and, upon request, made available to the public and media.

**From:** Tyler Mattingly <tylermattingly@kw.com>
**Sent:** Thursday, September 11, 2025 12:13 PM
**To:** Collins, Kimberly <KimberlyCo@LeeSchools.net>; Layner, Melissa <MelissaAL@LeeSchools.Net>; Sowers, Milagros <MilagrosFS@LeeSchools.Net>; Moreland, Barbara <BarbaraLMo@LeeSchools.net>; McGinley, Steven <StevenMMc@LeeSchools.net>
**Cc:** Superintendent <Superintendent@LeeSchools.net>
**Subject:** Re: Concerning message from your staff member: Brooke Wold - Lemuel Teal Middle

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you for your email and response, Kim. Just came across another disgusting/sadening post from another Lee county teacher. I am really taken back with the mentality of the teachers that are teaching our future. WOW (My below message applies to this one as well) and copied the appropriate staff for her school.

Composite Exhibit 3 - C
Page 9

## Harris, Michael

| | |
|---|---|
| **From:** | Superintendent |
| **Sent:** | Thursday, September 11, 2025 1:10 PM |
| **To:** | Harris, Michael |
| **Cc:** | Mathews, Holly |
| **Subject:** | FW: Disgusting |

## Kim Collins

**Office Manager – Superintendent's Office**
2855 Colonial Blvd, Fort Myers, FL 33966
**o:** 239-337-8301
kimberlyco@leeschools.net
www.leeschools.net

**THE SCHOOL DISTRICT OF LEE COUNTY**

    

Sunshine Law and Public Records: Most Email communication sent or received by District staff are considered public records that must be retained and, upon request, made available to the public and media.

**From:** Brooke Carpentier <brookyp12@yahoo.com>
**Sent:** Thursday, September 11, 2025 12:28 PM
**To:** Superintendent <Superintendent@LeeSchools.net>
**Subject:** Disgusting

Caution: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

This is a teacher at Lemuel teal middle school in Lehigh. I will be sharing with the parents if nothing is done about this and the news. Please advise on what will be done.

# 6A-10.081 Principles of Professional Conduct for the Education Profession in Florida.

(1) Florida educators shall be guided by the following ethical principles:

(a) The educator values the worth and dignity of every person, the pursuit of truth, devotion to excellence, acquisition of knowledge, and the nurture of democratic citizenship. Essential to the achievement of these standards are the freedom to learn and to teach and the guarantee of equal opportunity for all.

(b) The educator's primary professional concern will always be for the student and for the development of the student's potential. The educator will therefore strive for professional growth and will seek to exercise the best professional judgment and integrity.

(c) Aware of the importance of maintaining the respect and confidence of one's colleagues, of students, of parents, and of other members of the community, the educator strives to achieve and sustain the highest degree of ethical conduct.

(2) Florida educators shall comply with the following disciplinary principles. Violation of any of these principles shall subject the individual to revocation or suspension of the individual educator's certificate, or the other penalties as provided by law.

(a) Obligation to the student requires that the individual:

1. Shall make reasonable effort to protect the student from conditions harmful to learning and/or to the student's mental and/or physical health and/or safety..

2. Shall not unreasonably restrain a student from independent action in pursuit of learning.

3. Shall not unreasonably deny a student access to diverse points of view.

4. Shall not intentionally suppress or distort subject matter relevant to a student's academic program.

5. Shall not intentionally expose a student to unnecessary embarrassment or disparagement.

6. Shall not intentionally provide classroom instruction to students in prekindergarten through grade 8 on sexual orientation or gender identity, except when required by Sections 1003.42(2)(n)3. and 1003.46, F.S.

7. Shall not intentionally provide classroom instruction to students in grades 9 through 12 on sexual orientation or gender identity unless such instruction is required by state academic standards as adopted in Rule 6A-1.09401, F.A.C., or is part of a reproductive health course or health lesson for which a student's parent has the option to have his or her student not attend.

8. Shall not intentionally violate or deny a student's legal rights.

9. Shall not discourage or prohibit parental notification of and involvement in critical decisions affecting a student's mental, emotional, or physical health or well-being unless the individual reasonably believes that disclosure would result in abuse, abandonment, or neglect as defined in Section 39.01, F.S.

10. Shall not harass or discriminate against any student on the basis of race, color, religion, sex, age, national or ethnic origin, political beliefs, marital status, handicapping condition, sexual orientation, or social and family background and shall make reasonable effort to assure that each student is protected from harassment or discrimination. Discrimination on the basis of race, color, national origin, or sex includes subjecting any student to training or instruction that espouses, promotes, advances, inculcates, or compels such student to believe any of the concepts listed in Section 1000.05(4)(a), F.S.

11. Shall not exploit a relationship with a student for personal gain or advantage.

12. Shall keep in confidence personally identifiable information obtained in the course of professional service, unless disclosure serves professional purposes or is required by law.

13. Shall not violate s. 553.865(9)(b), F.S., which relates to entering restrooms and changing facilities designated for the opposite sex on the premises of an educational institution.

14. Shall not violate s. 1000.071, F.S., which relates to the use of personal titles and pronouns in educational institutions.

(b) Obligation to the public requires that the individual:

1. Shall take reasonable precautions to distinguish between personal views and those of any educational institution or organization with which the individual is affiliated.

2. Shall not intentionally distort or misrepresent facts concerning an educational matter in direct or indirect public expression.

3. Shall not use institutional privileges for personal gain or advantage.

4. Shall accept no gratuity, gift, or favor that might influence professional judgment.

5. Shall offer no gratuity, gift, or favor to obtain special advantages.

(c) Obligation to the profession of education requires that the individual:

1. Shall maintain honesty in all professional dealings.

2. Shall not on the basis of race, color, religion, sex, age, national or ethnic origin, political beliefs, marital status, handicapping condition if otherwise qualified, or social and family background deny to a colleague professional benefits or advantages or participation in any professional organization.

3. Shall not interfere with a colleague's exercise of political or civil rights and responsibilities.

4. Shall not engage in harassment or discriminatory conduct which unreasonably interferes with an individual's performance of professional or work responsibilities or with the orderly processes of education or which creates a hostile, intimidating, abusive, offensive, or oppressive environment; and, further, shall make reasonable effort to assure that each individual is protected from such harassment or discrimination.

5. Shall not make malicious or intentionally false statements about a colleague.

6. Shall not use coercive means or promise special treatment to influence professional judgments of colleagues.

7. Shall not misrepresent one's own professional qualifications.

8. Shall not submit fraudulent information on any document in connection with professional activities.

9. Shall not make any fraudulent statement or fail to disclose a material fact in one's own or another's application for a professional position.

10. Shall not withhold information regarding a position from an applicant or misrepresent an assignment or conditions of employment.

11. Shall provide upon the request of the certificated individual a written statement of specific reason for recommendations that lead to the denial of increments, significant changes in employment, or termination of employment.

12. Shall not assist entry into or continuance in the profession of any person known to be unqualified in accordance with these Principles of Professional Conduct for the Education Profession in Florida and other applicable Florida Statutes and State Board of Education Rules.

13. Shall self-report within forty-eight (48) hours to appropriate authorities (as determined by district) any arrests/charges involving the abuse of a child or the sale and/or possession of a controlled substance. Such notice shall not be considered an admission of guilt nor shall such notice be admissible for any purpose in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory. In addition, shall self-report any conviction, finding of guilt, withholding of adjudication, commitment to a pretrial diversion program, or entering of a plea of guilty or Nolo Contendere for any criminal offense other than a minor traffic violation within forty-eight (48) hours after the final judgment. When handling sealed and expunged records disclosed under this rule, school districts shall comply with the confidentiality provisions of Sections 943.0585(4)(c) and 943.059(4)(c), F.S.

14. Shall report to appropriate authorities any known allegation of a violation of the Florida School Code or State Board of Education Rules as defined in Section 1012.795(1), F.S.

15. Shall seek no reprisal against any individual who has reported any allegation of a violation of the Florida School Code or State Board of Education Rules as defined in Section 1012.795(1), F.S.

16. Shall comply with the conditions of an order of the Education Practices Commission imposing probation, imposing a fine, or restricting the authorized scope of practice.

17. Shall, as the supervising administrator, cooperate with the Education Practices Commission in monitoring the probation of a subordinate.

(d) A certificate holder serving as a school principal shall not prevent, direct school personnel to prevent, or allow school personnel to prevent students from accessing any material used in a classroom, made available in a school or classroom library, or included on a reading list unless the certificate holder or his or her designee has reviewed the material and determines it violates the prohibitions in Section 1006.28(2)(a)2., F.S., the material is unavailable to students based upon school board polices adopted to implement Section 1006.28(2)(d), F.S., or it was determined under the district's objection process adopted to implement Section 1006.28(2)(a)2., F.S., that the material violated one of the prohibitions in that section.

*Rulemaking Authority 1001.02, 1012.795(1)(j) FS. Law Implemented 1012.795 FS. History–New 7-6-82, Amended 12-20-83, Formerly 6B-1.06, Amended 8-10-92, 12-29-98, Formerly 6B-1.006, Amended 3-23-16, 11-22-22, 2-21-23, 5-23-23, 8-22-23, 5-30-24.*

# ARTICLE 6 – WORKING CONDITIONS

**6.01 - PHYSICAL FACILITIES**

**(1) Facilities Planning:** The Board shall involve teachers in the preparation of educational specifications for school facilities. The specifications shall be used in the planning and construction of new facilities and in the planning of additions or the remodeling of existing facilities. These specifications will be used, at the discretion of the Board. Such specifications may include:

    **(a) Room Assignment:** teaching room/station for each teacher commensurate with the design capacity of the school;

    **(b) Dining Area:** teacher dining area;

    **(c) Lounge:** teacher preparation/rest areas and furnishings;

    **(d) Restrooms:** adult rest room facilities;

    **(e) Conference Rooms:** conference rooms;

    **(f) Temperature:** climate control;

    **(g) Parking Area:** designated employee parking area;

    **(h) Supplies:** instructional equipment;

    **(i) Boards:** chalk boards and tack board areas;

    **(j) Safety/Security:** building and grounds safety and security provisions;

    **(k) Maintenance:** custodial and maintenance provisions;

    **(l) Sound:** acoustical control.

**(2) Storage:** Each teacher shall have a securable storage space for teaching materials and equipment.

**(3) Safe and Secure Conditions:** Adequate, clean, safe and sanitary working conditions shall be provided for all employees. No employee shall be required to work in conditions that are not safe or secure or perform tasks which endanger health and safety. The site supervisor or principal shall, in consultation with the department responsible for safety and security, whenever possible, make an initial determination as to whether an unsafe working condition exists.

**(4) Reporting Unsafe Conditions:** An employee who becomes aware of an unsafe working condition shall immediately report the situation to their supervisor. A safety/security deficiency form shall be provided to employees either by electronic file or by hardcopy for reporting purposes. The supervisor shall investigate and initiate whatever corrective action they deem appropriate with consultation and notice given to the department responsible for safety and security. If the employee

Composite Exhibit 4
Page 3

believes that the condition has not been corrected, he/she may report it to the School Safety/Security Committee in writing on the Safety/Security Deficiency Form. All hard copies of the Safety/Security Deficiency Form shall be directed to the Safety & Security department.

## 6.02   - PROTECTION OF PERSON

**(1) Injury:** The District assures employees of its support when employees have followed the laws and regulations of the State and the policies of the Board in carrying out their responsibility. An employee involved in injury to themselves, a student or another employee shall immediately report same to their immediate supervisor and thereafter make such written reports as necessary to comply with School Board Policy.

**(2) Student Discipline:** The teacher's responsibility for the control and direction of students shall be exercised throughout the campus of each school and is not limited to a specific group of children or classroom. When in the judgment of the teacher a student requires the attention of the principal or other school or District staff specialist, the teacher shall so inform the principal or their designee on the appropriate school form. When administrative assistance is provided, the teacher shall receive a written statement of the specific action taken within five (5) days. Individual records of student discipline, where available, will be accessible to teachers as an aid for determining disciplinary recommendations concerning particular students.

**(3) Workplace Civility:** Employees shall not engage in speech, conduct, behavior (verbal or nonverbal), or commit any act of any type which is reasonably interpreted as abusive, profane, intolerant, menacing, intimidating, threatening, or harassing against any person in the workplace.

**(4) District Support:** The District assures employees of its support when an employee's conduct is in accordance with applicable state and federal laws, regulations, and board policy. In carrying out their responsibility for maintaining good discipline, an employee shall impose classroom discipline consistent with administrative direction. In the event that an employee feels it is necessary to protect themselves or others from injury, the employee may refer to board policy and/or Florida Statute 1003.32.

**(5) Assault:** Any case of assault upon a teacher which occurs in the line of duty shall

1  promptly be reported to the principal. The District shall provide legal advice to the
2  teacher concerning their rights and obligations with respect to such assault, and
3  its legal assistance to the teacher in connection with handling of the incident by
4  law enforcement and judicial authorities. In such event, the following shall apply:
5    **(a) Legal Proceedings:** Time for appearance before a judicial body or legal
6    authority shall result in no loss of salary or reduction of accumulated leave.
7    **(b) Criminal Actor:** Where a teacher is found guilty of a criminal charge
8    related to the incident by a court of competent jurisdiction, the District shall be
9    immediately released from further responsibility to the teacher.
10   **(c) Injury:** In the case of injury occurring under such circumstances, the
11   teacher shall provide a written statement from a licensed medical physician
12   regarding the extent and nature of injuries sustained. A teacher shall be
13   entitled to Illness or Injury In-Line-Of-Duty Leave as provided by Florida
14   Statute 1012.63, and Article 12.02(2) of this Agreement. After ten (10) work
15   days, the teacher shall receive the salary difference between Workers'
16   Compensation and regular salary under emergency sick leave status, for
17   such term and under such conditions as the District shall deem appropriate
18   after medical consultation.
19
20 **(6) Harassment or Discrimination:** The District is committed to ensuring equity in
21 school programs and employment practices. The District prohibits harassment and
22 discrimination as provided in Florida Statute 100.05 and School Board Policy.
23 Employees who feel they have been harassed or discriminated against are
24 encouraged to submit a complaint in accordance with board policy.
25
26 **(7) Nursing Mothers:** Protections shall be granted to nursing mothers in accordance
27 with applicable state and federal laws, including Section 7 of the Fair Labor Standards
28 Act. Nursing mothers will be provided with reasonable break time to express breast
29 milk for one year after a child's birth. The District will provide a place, other than a
30 bathroom, that is shielded from view and free from intrusion by co-workers and the
31 public, which may be used by an employee to express breastmilk. Employees must
32 keep their immediate supervisor informed of their needs so that appropriate
33 accommodations can be made with minimal disruption to the employee and the
34 worksite. Nursing mothers who feel they have been denied appropriate
35 accommodations are encouraged to contact Human Resources. Nothing herein shall
36 be construed to expand these protections beyond the limits of applicable state and
37 federal law.
38
39 **(8) Domestic or Sexual Violence:** Protections shall be granted to employees who

Composite Exhibit 4
Page 5

are victims of domestic or sexual violence in accordance with Florida Statute 743.313. Employees will be provided with leave in accordance with Article 12. The District will ensure that related public records exemptions are provided, may refer reported cases to the appropriate Threat Assessment Team for review, and will allow employees to request a temporary transfer or reassignment. Employees must keep their immediate supervisor informed of their needs so that appropriate accommodations can be made with minimal disruption to the employee and the worksite. Employees who feel they have been denied appropriate accommodations are encouraged to contact Human Resources. Nothing herein shall be construed to expand these protections beyond the limits of applicable state and federal law.

**6.03 - PROTECTION OF PERSONAL PROPERTY:** The District shall reimburse each employee if either of the following occurs while they are discharging their duties in accordance with their job description:

**(1) Criminal Act:** Loss or damage to items of clothing and related personal property worn or carried about the person which is damaged or destroyed as a result of an assault, less any amount paid by insurance.

**(2) Negligence:** Loss or damage of personal property as a result of negligence by the building administrator or their designee as determined by the appropriate administrator of the Property/Casualty Loss Program within the guidelines of the current Property/Casualty liability guidelines. The total liability of the Board under this section, per teacher occurrence, shall not exceed six hundred dollars ($600) less any amount reimbursed by insurance. A proof of loss statement, including verified replacement value, shall be provided by the teacher.

**6.04 - ALCOHOL, TOBACCO, AND DRUG-FREE WORKPLACE:** Campuses shall be tobacco/smoke-free at all times, including e-Cigarettes and/or vapor cigarettes, per School Board Policy. No employee shall possess, consume, be under the influence of (as defined by the prevailing legal limit) or sell alcoholic beverages or manufacture, distribute, dispense, possess or use alcoholic beverages on the job or in the workplace. Employees are prohibited from using, distributing, manufacturing, processing, selling, cultivating or attempting to sell illegal, controlled substances at any time whether on or off duty or on or off District property.

**(1) Notice of Arrest:** As a condition of employment, each employee shall notify the appropriate administrator of any arrest/charges involving the sale or possession of drugs within 48 hours of any such arrest/charge.

**(2) Notice of Conviction:** The District shall take one of the following actions, within thirty (30) days of receiving such notice, with respect to any employee who is so convicted:

    **(a) Program Participation:** Require the employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a federal, state, or local health officials, law enforcement, or other appropriate agency.

    **(b) Failure to Participate:** If the employee fails to participate satisfactorily in a drug abuse assistance or rehabilitation program, the District will recommend non-reappointment, suspension, or termination of the employee.

    **(c) Other Personnel Action:** Take other appropriate personnel action, up to and including termination.

**(3) Alcohol, Tobacco, or Drug Testing:** All alcohol, tobacco, or drug testing shall be conducted in accordance with District policy and procedures.

    **(a) Mandatory:** Safety sensitive positions, including those defined by the U.S. Department of Transportation standards, may be required to submit to alcohol, tobacco, or drug testing on a random basis.

    **(b) Reasonable Suspicion:** No employee shall be required to submit to drug or alcohol testing without reasonable suspicion except as otherwise required by law or this agreement. All drug and alcohol testing shall be conducted in accordance with District policy and procedures for drug and alcohol testing.

**(4) Exemptions:**

    **(a) Prescription Drugs:** Possession or use of prescription drugs by an employee for which they hold the prescription is exempt from this section.

    **(b) Confiscation:** Employees who perform duties which require the disposition or confiscation of alcoholic beverages or controlled substances are exempt from this section if performing those specified duties.

**(5) Employee Assistance Program:** Employee assistance will be available through Human Resources and the Employee Assistance Program (EAP).

**(6) Last Chance Agreement:** A first-time Alcohol, Tobacco, and Drug-Free Workplace violation will result in an offer of a Last Chance Agreement (LCA) to the employee, a letter of reprimand (LOR), and/or mandatory referral to EAP, except in cases where aggravating factors exist. Aggravating factors may include any conduct that would be independent grounds for disciplinary action.



| | |
|---|---|
| Book | Policy Manual |
| Section | 3000 Instructional Staff |
| Title | OUTSIDE ACTIVITIES OF STAFF |
| Code | po3231 |
| Status | Active |
| Adopted | June 27, 2023 |
| Last Revised | September 17, 2024 |

## 3231 - OUTSIDE ACTIVITIES OF STAFF

Instructional staff members should avoid situations in which their personal interests, activities, and associations conflict with the interests of the District. If such situations threaten a staff member's effectiveness within the school system, the Superintendent and/or School Board shall evaluate the impact of such interest, activity, or association upon the instructional staff member's responsibilities.

Staff members may not dedicate work time to an outside interest, activity, or association.

Staff members shall not use school time to solicit or accept customers for private enterprises.

Staff members may not engage in business transactions on behalf of private enterprises in which s/he profit by virtue of his/her official position or authority or benefit financially from confidential information that the employee has obtained or may obtain by reason of his/her position or authority.

Pursuant to State law and Board Policy 3232, instructional staff members shall not participate in any political campaign for an elective office while on duty. Furthermore, instructional staff members shall not authorize the expenditure of public funds for a political advertisement or electioneering communication concerning an issue, referendum, or amendment, including any State question, that are subject to a vote of the electors, unless the electioneering communication is limited to factual information.

Pursuant to F.S. 106.011, "electioneering communication" shall mean any communication that is publicly distributed by a television station, radio station, cable television station, satellite system, newspaper, magazine, direct mail, or telephone. In order to qualify as an electioneering communication, the communication must also be characterized by the following:

    A. refers to or depicts a clearly identified candidate for office without expressly advocating the election or defeat of a candidate, but is susceptible to no reasonable interpretation other than an appeal or against a specific candidate;

    B. is made within thirty (30) days before a primary or special primary election or sixty (60) days before any other election for the office sought by the candidate; and

    C. is targeted to the relevant electorate in the geographic area the candidate would represent if elected.

The constitutional right to express political and other opinions as citizens is reserved to all employees.

Staff members should refrain from expressions that disrupt the efficient operation of the school and/or interfere with the maintenance of discipline by school officials.

Unless expressly approved by the Superintendent, staff members may not accept fees for tutoring when such tutoring is conducted during the normal work day.

Similarly, unless expressly approved by the Superintendent, staff members may not accept fees for remedial tutoring of students currently enrolled in one (1) or more of their classes.

If the District elects to participate in the Florida Department of Education's tutoring program created through the Reading Achievement Initiative for Scholastic Education Act (F.S. 1008.365), instructional personnel and high school students serving as tutors for after-school tutoring may be provided a stipend.

In accordance with this policy, Board facilities and materials shall not be utilized for such tutoring unless such tutoring is provided as part of the District's participation in the RAISE Program.

Revised 9/17/24

**© Neola 2024**

Legal          F.S. 104.31

               F.S. 1006.32

               F.S. 1008.365

               F.S. 1012.23



| Book | Policy Manual |
|---|---|
| Section | 7000 Property |
| Title | USE OF SOCIAL MEDIA |
| Code | po7544 |
| Status | Active |
| Adopted | June 27, 2023 |
| Last Revised | December 5, 2023 |

### 7544 - USE OF SOCIAL MEDIA

Technology is a powerful tool to enhance education, communication, and learning.

The School Board authorizes the use of social media to promote community involvement and facilitate effective communication with students, parents/guardians, staff, and the general public. Social media is defined in Bylaw 0100.

The Superintendent is charged with designating the District-approved social media platforms/sites, consistent with the Florida Department of Management Service's (DMS) list of prohibited applications, which shall be listed on the District's website.

In designating District-approved social media platforms/sites, the Superintendent shall specify which platforms/sites are strictly prohibited for all uses and which ones may be appropriate for use at the District-level, the building or department level, for extra-curricular activities, and at the individual level by employees for professional purposes.

Students are prohibited from accessing social media platforms through the use of Internet access provided by the District except when expressly directed by a teacher solely for educational purposes.

It is critical that students be taught how to use social media platforms safely and responsibly. Social media (as defined in Bylaw 0100) are a powerful and pervasive technology that affords students and employees the opportunity to communicate for school and work purposes, and to collaborate in the delivery of a comprehensive education. Federal law mandates that the District provide for the education of students regarding appropriate online behavior, including interacting with other individuals on social networking websites and in chat rooms, and regarding cyberbullying awareness and response. See Board Policy 7540.03 – *Student Internet Safety and Acceptable Use*.

The District recognizes that employees may use social media for personal, as well as professional reasons. The District neither encourages nor discourages employees' use of social media for personal purposes. The District regulates employees' use of social media for purposes related to their District assignment to the same extent as it regulates any other form of employee communication in that regard.

The District uses approved social media platforms/sites as interactive forms of communication and accepts public comments. The District-approved social media platforms/sites are considered limited public forums. As such, the District will monitor posted comments to verify they are on-topic, consistent with the posted rules for use of the forum, and in compliance with the platform/site's applicable terms of service. The Board's review of posted comments will be conducted in a viewpoint neutral manner, and consistent with State and Federal law. Employees' personal posts on the public platforms/sites are limited/restricted to matters of general public interest that are not related to the employee's specific employment and wholly unrelated to the employee's job responsibilities (i.e., matters where it is clear the individual is

posting not in an official capacity, but simply as a member of the public).  Employees in administrative positions are ordinarily not permitted to post personal comments on matters of general public interest because to do so could be misconstrued as Board-sponsored speech.

Each District-approved social media account/site must contain a statement that specifies its purpose(s) and limits those who access the social media account/site to use of the account/site only for that/those purpose(s) and in accordance with any specified procedures and applicable terms of service.  Users are personally responsible for the content of their posts.

## Social Media for Instructional and School-Sponsored Activities

Staff may, with prior approval/authorization from the Designated Administrator, use social media platforms/sites for classroom instruction or school-sponsored activities.  However, the use of TikTok or any successor platform is prohibited on District-owned devices, through Internet access provided by the District, or as a platform to communicate or promote any District school, school-sponsored club, extra-curricular organization, or athletic team. When a staff member uses a District-approved social media platform/site for an educational purpose, it will be considered an educational activity and will not be considered a limited public forum.  Students' use of District-approved social media platforms/sites must be consistent with the Student Code of Conduct, Policy 5722 – *School-Sponsored Student Publications and Productions*/AP 5722 - *School Publications/Productions*, Policy 7540.03 - *Student Internet Safety and Acceptable Use*/AP 7540.03 – *Student Technology Acceptable Use and Safety*,  the instructor's directions/procedures, and the platform/site's applicable terms of service. Students are prohibited from posting or releasing personally identifiable information about students, employees, and volunteers through District-approved social media, without appropriate consent.

## Expected Standards of Conduct on District-Approved Social Media

Employees who access District-approved social media platforms are expected to conduct themselves in a respectful, courteous, and professional manner. Students, parents, and members of the general public who access District-approved social media platforms are similarly expected to conduct themselves in a respectful, courteous, and civil manner.

District-approved social media sites must comply with DMS's current list of prohibited applications and shall not contain content that is obscene; is vulgar and lewd such that it undermines the school's basic educational mission;  is libelous or defamatory; constitutes hate speech; promotes illegal drug use; is aimed at inciting an individual to engage in unlawful acts or to cause a substantial disruption or material interference with District operations; or interferes with the rights of others. The District may exercise editorial control over the style and content of student speech on District-approved social media if reasonably related to legitimate pedagogical concerns.  Staff or students who post prohibited content shall be subject to appropriate disciplinary action.

The District is committed to protecting the privacy rights of students, parents/guardians, staff, volunteers, Board members, and other individuals on District-approved social media sites.  District employees are prohibited from posting or releasing confidential information about students, employees, volunteers, or District operations through social media, without appropriate consent (i.e., express written consent from the parent of a student, the affected employee or volunteer, or the Superintendent concerning District operations).

## Retention of Public/Student Records

District communications that occur through the use of District-approved social media platforms/sites – including staff members' use of social media with school-sponsored activities, and comments, replies, and messages received from the general public – may constitute public records or student records, and all such communications will be maintained (i.e., electronically archived) in accordance with the Board's adopted record retention schedule and all applicable State statutes.  (See AP 8310A – *Requests for Public Records*).

If a staff member uses District-approved social media platforms/sites in the classroom for educational purposes (i.e., classroom instruction), the staff member must consult with the Principal concerning whether such use may result in the creation of public and/or education records that must be maintained (i.e., electronically archived) for a specific period of time.

## Employees' Use of District Technology Resources to Access Social Media for Personal Use

Employees are permitted to use District technology resources (as defined in Bylaw 0100) to access social media for personal use during breaks, mealtimes, and before and after scheduled work hours, except they shall not download or access any prohibited application on DMS's current list using District technology.

They are reminded that the District may monitor their use of District technology resource.

## Employees' Use of Personal Communication Devices at Work to Access Social Media for Personal Use

Employees are permitted to use personal communication devices to access social media for personal use during breaks and mealtimes.

Employees are prohibited from posting or engaging in communication that violates State or Federal law, Board policies, or administrative procedures. If an employee/volunteer's communication interferes with his/her ability to effectively perform his/her job or violates State or Federal law, Board policies, or administrative procedures, the District may impose disciplinary action and/or refer the matter to appropriate law enforcement authorities.

This policy and its corresponding administrative procedure will be reviewed and updated on an annual basis.

Revised 12/5/23

© Neola 2023

| | |
|---|---|
| Legal | F.S. 112.22 |
| | F.S. Chapter 119 |
| | F.S. 1001.41 |
| | F.S. 1001.42 |
| | F.S. 1001.43 |
| | F.S. 1002.221 |
| | F.S. 1003.42 |
| | F.A.C. 6A-10.081 |
| | 20 U.S.C. 1232g |
| | 34 C.F.R. Part 99 |
| | Protecting Children in the 21st Century Act, Pub. L. No. 110-385, Title II, Stat. 4096 (2008) |
| | Children's Internet Protection Act (CIPA), Pub. L. No. 106-554 (2001) |