UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BROOKE WOLD,

    Plaintiff,

v.                                                      Case No.: 2:25-cv-00994-KCD-NPM

DR. DENISE M. CARLIN,
SUPERINTENDENT OF LEE COUNTY,
FLORIDA SCHOOLS in her
Individual and Official Capacity,

    Defendant.

_____/

## DECLARATION OF DR. SHANNA JOHNSTON

I, Dr. Shanna Johnston, declare, under penalty of perjury, that the following is true and correct based on my personal knowledge and review of the official records of the School District of Lee County, Florida. Any and all attachments to my declaration are true and correct copies of records of the School District of Lee County, Florida, as they are kept in the normal course of business:

1. I serve as Chief Human Resources Officer of the School District of Lee County, Florida (the "District"). In that role, my duties and responsibilities include providing executive leadership to all aspects of human resources management, organizational development and professional development initiatives. I assist the District board with setting policy, procedures, and best practices. I am also

responsible for a healthy workforce focused on creating an environment where each student achieves his/her highest personal potential.

2. I have personal knowledge of the actual and threated disruption to the operations of the District following Brooke Wold ("Wold") and Morgan Wright's ("Wright") September 10, 2025 social media posts regarding the assassination of Charlie Kirk. My statements are made based on first-hand involvement, direct observation, and review of agency records maintained in the ordinary course of business.

3. On the evening of September 10, 2015, the Assistant Director of Professional Standards, Mike Harris, contacted me to discuss the many complaints that the Department was receiving regarding District employees, including employees Wold and Wright, posting comments about the assassination of Charlie Kirk.

4. As the complaints came in, the Department made the decision to place the affected employees on administrative leave with pay, in accordance with District policy so that the Department could conduct an investigation.

5. The social media posts at issue have resulted in actual and threatened disruption to District operations including the redirection of administrative, human resources, and safety and security resources to address issues directly arising from the posts; the diversion of school and district leadership time to handle the fallout from the posts; the interruption of established workflows; and delays in routine decision-making processes. These impacts materially interfered with the District's ability to carry out normal operational and instructional functions.

6. Specifically, the posts and resulting response resulted in:

   a. The dedication of significant hours of Human Resources administrative staff time receiving calls and emails from members of the community about the posts.

   b. Additional security was required at District board meetings, to provide a safe and secure atmosphere.

   c. Individuals made threats of rallies and several rallies occurred.

   d. The Professional Standards staff spent countless hours, including hours outside of their normal workday, on the investigation to ensure a nonbiased and fair process.

   e. Other Professional Standards projects and trainings were delayed because of these cases.

   f. School Principals had to field calls and emails from parents regarding Wright and Wold.

   g. The posts and resulting response created a reasonable perception among staff and school-based administrators of instability and potential conflict. This disruption affected the working environment and diminished the sense of psychological safety necessary for effective school and District operations.

   h. Numerous public speakers came to District board meetings to share their concern regarding the safety of District schools if the affected teachers were allowed to return to their classrooms. Other speakers voiced

concerns regarding the safety of District schools if the affected teachers were not allowed to return creating a situation of threatened disruption regardless of what decision was made.

 i. Community trust was diminished because of the continuous media coverage of the teachers in Lee County including Wright and Wold.

7. In total, the conduct of the subject teachers produced conditions that both directly and indirectly impeded the District's ability to maintain orderly, efficient, and consistent operations.

8. With respect to Wright, there were certain characteristics of his post and the context within which it was made that resulted in actual and threated disruption.

9. During our determination process I took into consideration the following actual/threatened disruption with respect to Wright's post and the context in which it was made:

 a. Wright's Facebook page clearly stated he was an employee of the District that worked at Diplomat Elementary School. Additionally, Wright's Facebook page on which he made the subject post is public facing and has a significant reach.

 b. It was discovered during the investigation that Wright had made an unrelated post just prior to the Charlie Kirk post about wearing black face to a cook out and using meth. This post, coming from an elementary school teacher, also created a threat of disruption.

    c. The local news came to Wright's school during dismissal time. As a supervisor of Principals for many years and a former school Principal, I know that this can disrupt the normal operations of a school. Parents want to be sure their children are safe and there can be inquiries as to why the news media is there on campus talking with parents.

    d. The principal at Wright's school, Diplomat Elementary, voiced concern about the level of disruption that could occur if Wright was sent back to his school.

10. Likewise, with respect to Wold, there were certain characteristics of her post and the context within which it was made that resulted in actual and threated disruption.

11. During our determination process I considered the following actual/perceived threats of disruption with respect to Wold's post and the context in which it was made:

    a. Wold was in the process of transferring from Lemuel Teal Middle School to G. Weaver Hipps Elementary School when the incident occurred. The Principal at G. Weaver Hipps Elementary was relieved to discover Wold was being recommended for termination as she was concerned about the level of disruption that could occur if she came to the school.

    b. The widespread news coverage and the multiple shares of Wold's social media post caused disruption in District board meetings, at her schools,

and in various District departments which interrupted efficient operations.

c. The Department had to prepare and send out to all District staff correspondence about the Board Policies regarding code of ethics and social media as a reminder in order to minimize potentially more disruption.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Dr. Shanna Johnston

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 18, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to parties of record.

> BOY AGNEW POTANOVIC MILLER, PLLC
> Trial Attorneys for Defendant
> 23 Barkley Circle
> Fort Myers, Florida 33907
> 239.208.6500 (telephone)
> 239.208.6511 (facsimile)
> Email: doug@bapfirm.com
> Email: johnm@bapfirm.com
> Secondary email: service@bapfirm.com
>
> By: /s/ Douglas B. Szabo_____

Douglas B. Szabo (Lead Counsel)
Florida Bar No. 710733
John M. Miller
Florida Bar No. 61488