UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BROOKE WOLD,

    Plaintiff,

v.                                                    Case No.: 2:25-cv-00994-KCD-NPM

DR. DENISE M. CARLIN,
SUPERINTENDENT OF LEE COUNTY,
FLORIDA SCHOOLS in her
Individual and Official Capacity,

    Defendant.

_____/

### DECLARATION OF PROFESSIONAL MICHAEL HARRIS

I, Michael Harris declare, under penalty of perjury, that the following is true and correct based on my personal knowledge and review of the official records of the School District of Lee County, Florida. Any and all attachments to my declaration are true and correct copies of records of the School District of Lee County, Florida, as they are kept in the normal course of business:

1. I serve as the Assistant Director of Professional Standards of the School District of Lee County, Florida (the "District"). In that role, my duties and responsibilities include leading the implementation and enforcement of employee conduct policies and ensuring a safe, ethical and professional environment within the District. I oversee investigations related to employee

misconduct, compliance with state and federal regulations and adherence to District policies.

2. I have personal knowledge of the actual and threated disruption to the operations of the District following Brooke Wold ("Wold") and Morgan Wright's ("Wright") September 10, 2025 social media posts regarding the assassination of Charlie Kirk. My statements are made based on first-hand involvement, direct observation, and review of agency records maintained in the ordinary course of business.

3. At approximately 9:00 pm on the evening of September 10, 2025, I began receiving several Professional Standards complaints concerning Wold. The complaints alleged that Wold had posted disparaging comments on social media regarding the death of Mr. Charlie Kirk

4. At or around the same time, the Principal of Diplomat Elementary contacted me to report that he had received an email from a concerned citizen regarding a post made by Wright regarding Mr. Kirk.

5. I also began receiving several calls and e-mails from District Chief of Staff, Holly Matthews, regarding multiple similar emails that were being sent to the Superintendent of the District.

6. In response to these e-mails and calls, I was required to:
   a. Contact my regional supervisors to inform them of the situation,
   b. Conduct a thorough review of applicable School Board Policies, and

    c. Pursuant to standard procedure, direct the Principals of each affected school to place the subject teacher on leave with pay the following day to allow for inquiry/investigation into the matter.

7. I was required to spend a total of 3.5 hours completing all necessary preparation and administrative actions for the following day.

8. On September 11, 2025, the Professional Standards team met to formally examine the complaints received the night before.

9. During this meeting, the volume of complaints significantly increased, encompassing not only Wold and Wright, but also allegations against additional District employees concerning similar social media posts.

10. The investigative process was further complicated by escalating external pressure including an anonymous phone call I received wherein the caller stated, "you need to fire these people who made comments like this, or we will get them."

11. Other similar calls and emails expressing the intent to engage in some form of retribution were concurrently reported to the Professional Standards Department throughout the day.

12. Additionally, one of the employees that had been placed on administrative leave with pay reported receiving harassing phone calls from unknown numbers. These calls included attempts to lure the employee to a specific external location, which the employee interpreted as a direct threat to her personal safety.

13. The report of these harassing phone calls required immediate action including additional meetings with Directors/Chiefs of Employee Relations, Safety and Security, the Regional Superintendents over each affected school, the Service Unit Director for the Island Coast Florida Education Association and the Chief of Safety and Security for to coordinate safety strategy. I was required to contact the affected employee to advise her not to leave her residence.

14. I also contacted Florida Education Association President Kerr Fazzone to convey my significant concerns regarding the safety of the involved employees. Mr. Fazzone agreed that placing the employees on paid administrative leave was the most prudent course of action to ensure their security.

15. As such, the Professional Standards Department formally notified each involved employee and his/her Principal and advised that the affected employees should be placed on administrative leave with pay during the pendency of the investigation.

16. The resulting investigation and public reaction to the social media posts at issues continued to result in actual and threatened disruption of District operations. Other disruptions caused or threated by this incident include:
    a. Due to fears of retaliation against employees Wold and Wright, they had to be removed from their classrooms causing the classrooms to be without a teacher for two weeks.

b. News media visited Wright's school and interviewed parents in the parent pick-up line causing calls from families with concerns about what was happening at the school.

c. Wold had been scheduled to start a new position at a different school which was delayed causing issues for the new school.

d. Well over 150 email complaints were received by the District causing an inundation for several Departments in the District.

e. School Principals were concerned that having the employees return to the work site would cause severe disruption to the education process.

f. On Thursday, September 25, at approximately 10:00 am, a group of demonstrators arrived at the District offices. The protesters positioned themselves at the front of the offices to advocate for free speech and express support for the employees who had made the social media remarks. News media personnel were also present on site to document the demonstration.

g. For the 2025-2026 school year, Professional Standards was tasked with completing "Project Integrity." The primary focus of this initiative is to develop comprehensive process documents and Standard Operating Procedures (SOPs) for the Department. This project is of paramount importance as it serves to outline the department's overall mission and is designed to significantly enhance operational efficiency and transparency. As a direct consequence of the social media incidents and

investigation, the progress of Project Integrity was significantly delayed. As a result, the initiative could not be completed by its initial deadline, preventing its implementation during the first semester.

    h. A standard Google search utilizing the phrase "Lee County Schools Charlie Kirk" yields substantial media coverage. The first ten pages of results—comprising approximately 100 distinct articles—detail this social media incident. This coverage originates from numerous news agencies, including prominent national news organizations, underscoring the widespread attention and reputational risk associated with the event.

17. Finally, as a direct consequence of the extensive and time-consuming social media investigation and resulting security concerns, the handling of a number of routine unrelated assistance cases could not be addressed with the expected degree of timeliness.

18. The disruption affected the timely handling of eight calls from other District employees requiring assistance including: a Department of Children and Families complaint regarding a bruised child, allegations from a teacher claiming physical assault by an administrator, and a complaint regarding a teacher's alleged excessive physical contact with a student.

19. As a direct consequence of the extensive and time-consuming social media investigation, the handling of these routine assistance cases could not be addressed with the expected degree of timeliness. Over the initial five-day

period during which all Coordinators were dedicated to the social media matter, a total of 19 separate assistance cases were negatively impacted by the resulting disruption.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Michael Harris

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 18, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to parties of record.

        BOY AGNEW POTANOVIC MILLER, PLLC
        Trial Attorneys for Defendant
        23 Barkley Circle
        Fort Myers, Florida 33907
        239.208.6500 (telephone)
        239.208.6511 (facsimile)
        Email: doug@bapfirm.com
        Email: johnm@bapfirm.com
        Secondary email: service@bapfirm.com

By: */s/ Douglas B. Szabo*
      Douglas B. Szabo (Lead Counsel)
      Florida Bar No. 710733
      John M. Miller
      Florida Bar No. 61488